HENRY TRUELSEN v. CITY OF DULUTH and Others.[1]

May 6, 1895.

Nos. 9472—(324).

**Municipal Bond Issue—Special Election—Validity.**

*Held*, under that portion of the charter of the city of Duluth found in Sp. Laws 1891, c. 55, § 35, that the city council was authorized to submit to vote of the electors a proposition for the issuance of water and light bonds to the extent of a certain specified amount for the purpose of erecting or purchasing a water and light plant,—that is, a combined plant, —provided certain other propositions clearly contemplated by the law were at the same time fully and fairly submitted to a vote of the electors; and, with the same conditions, the council was also authorized to submit to said electors the question whether the proceeds of said bonds should be used to erect a new plant or the purchase of a plant then in existence in said city.

**Same.**

*Held* further, that, as against the proposition first above mentioned, the other propositions relative to the erection or purchase of water and light plants separately were not fairly and justly submitted to the voters at the election in question; and that such other propositions were submitted in a manner which may have prevented a full and fair expression of the will of the voters on their merits.

Proceeding instituted by Henry Truelsen in the district court for St. Louis county to contest the validity of a special election. Notice of contest was served upon the city and upon Ray T. Lewis, mayor of the city, and upon Benjamin F. Howard, a member of the city council, who appeared. From a judgment affirming the validity of the election, entered in pursuance of the findings and order of Lewis, J., before whom the matter was tried, the contestant, Truelsen, appealed. Reversed.

*S. T. & Wm. Harrison*, for appellant.

*Page Morris, W. W. Billson*, and *J. L. Washburn*, for respondents.

[1] Reported in 63 N. W. 714.

COLLINS, J. One branch of this litigation, which grows out of a special election held in the city of Duluth under and by virtue of Sp. Laws 1891, c. 55, § 35, was before us at the last term. See opinion in 60 Minn. 132, 61 N. W. 911. On the case being remanded, it was duly brought to trial, and from a judgment affirming the validity of the election, and declaring three out of the ten propositions submitted to the voters duly carried, the contestant appeals. Quite a number of questions have been argued, but we shall consider only those which seem to have real merit.

Section 35, supra, authorizes the issuance of "water and light bonds" by the city to such an extent as may be necessary for the purpose of erecting and maintaining suitable water and light plants, or for purchasing any water or light plant in operation in said city. These bonds were to be issued, sold, and evidenced as were the general bonds of said city, and were to "be a first lien upon all water and light appliances and structures of every kind erected, owned, or purchased by said city." Then follows a provision regulating the manner of issuance, as follows:

"Said water and light bonds shall be issued in the following manner:

"Whenever the common council may deem it expedient they shall submit to the legal voters of the city, at any general city election or at a special election to be called by said common council for that purpose, the proposition of issuing said water and light bonds to an amount deemed by them desirable to be issued at such time. Said election shall be called, if a special election, and whether special or general shall be conducted, in the same manner and with the same formalities as other city elections. The ballots to be voted at said election may read as follows:

"(1) In favor of the proposition of issuing water and light bonds to the extent of (here state amount) for the purpose of erecting or purchasing a water plant.

"(1) Against the proposition of issuing water and light bonds to the extent of (here state amount) for the purpose of erecting or purchasing a water plant.

"(2) In favor of the proposition of expending the moneys derived from the sale of said bonds in erecting a water plant.

"(2) In favor of the proposition of expending the moneys derived from the sale of said bonds in purchasing a water plant already in existence in said city.

"(3) In favor of the proposition of issuing water and light bonds to the extent of (here state amount) for the purpose of erecting a light plant for the city of Duluth.

"(3) Against the proposition of issuing water and light bonds to the extent of (here state amount) for the purpose of erecting a light plant for the city of Duluth.

"(4) In favor of the proposition of using the moneys derived from the sale of said bonds in erecting a light plant for said city.

"(4) In favor of the proposition of using the money derived from the sale of said bonds for purchasing a light plant already in existence in said city.

"If a majority of the votes cast at said election shall be in favor of issuing water and light bonds, the city of Duluth shall, through its proper officers, without further act, be authorized to issue said bonds to the amount voted and to sell and negotiate the same as other city bonds. It shall be the duty of the common council to expend the moneys derived from the sale of said bonds in accordance with the directions of the voters as shown by said election.

"Said common council may from time to time thereafter submit the proposition of issuing additional water and light bonds, in such additional sums as they may deem wise, to the legal voters of said city. The ballots may be in substantially the foregoing forms, with such changes as may be necessary, and, if a majority of the votes cast at such election shall be in favor of issuing said additional water and light bonds, the said city of Duluth, through its proper officers, shall be authorized to issue such additional water and light bonds as may be authorized by said voters."

We shall hereinafter have occasion to refer to other provisions of section 35, but will now pass to the fact that, by resolution of the common council, there was called a special election, to be held October 26, 1894, at which time should be submitted to the electors of the city 10 distinct propositions relating to the issuing of bonds for adoption or rejection. The propositions were distinctly stated in the resolution and the form of the ballot prescribed. These propositions were set out, and the form followed in the ballot actually used, which was as follows:

## CITY BALLOT.

Put a cross mark (X) opposite the word "Yes" standing opposite each proposition which you wish to vote for, and a cross mark opposite the word "No" standing opposite each proposition which you wish to vote against, in the squares indicated by the arrow.

1. Upon the proposition of issuing water and light bonds to the extent of two million one hundred and six thousand dollars ($2,106,000) for the purpose of erecting or purchasing a water and light plant.          Yes
          No

2. Upon the proposition of expending the moneys derived from the sale of said bonds in erecting a water and light plant.          Yes
          No

3. Upon the proposition of expending the moneys derived from the sale of said bonds in purchasing a water and light plant already in existence in said city, said bonds to be issued and sold by the common council as the same may be needed to pay for said plant, or to discharge or to take up the bonded indebtedness of said plant.          Yes
          No

4. Upon the proposition of issuing water and light bonds to the extent of two million one hundred and six thousand dollars ($2,106,000) for the purpose of erecting or purchasing a water plant.          Yes
          No

5. Upon the proposition of expending the moneys derived from the sale of said bonds in erecting a water plant.          Yes
          No

6. Upon the proposition of expending the moneys derived from the sale of said bonds in purchasing a water plant already in existence in said city.          Yes
          No

7. Upon the proposition of issuing water and light bonds to the extent of two million one hundred and six thousand dollars ($2,-106,000) for the purpose of erecting or purchasing a light plant for the city of Duluth.          Yes
          No

8. Upon the proposition of using the moneys derived from the sale of said bonds in erecting a light plant for said city.          Yes
          No

9. Upon the proposition of using the moneys derived from the sale of said bonds in purchasing a light plant, already in existence in said city.          Yes
          No

10. Upon the proposition that, in the event the voters at this election shall declare in favor of purchasing a water and light plant already in existence in the city of Duluth, additional water and light bonds to the extent of six hundred thousand dollars ($600,000) shall be issued for the purpose of extending and improving said plant, said bonds to be issued and sold by the common council, as the same may be needed for said purposes.          Yes
          No

At this election there were cast 4,414 votes, according to the poll lists and the decision of the city council acting as a canvassing board.   On the proposition numbered 1 there were cast 4,166 votes, of which 3,215 were in the affirmative, and 951 in the negative. On proposition numbered 2 the total vote cast was 3,532, of which 1,478 were affirmative, and 2,054 negative.   On proposition numbered 3 there were cast 4,047 votes, the affirmative vote being 2,137, the negative 1,910.   On proposition numbered 10 the total vote was 3,541, of which 2,235 were in the affirmative, and 1,306 in the negative.   Upon canvassing the returns, the city council declared the first, third, and tenth propositions carried, and this was the decision of the court.   It was held and stands admitted that propositions 2, 4, 5, 6, 7, 8, and 9 were defeated at the polls.

1. The first question which we are required to determine arises out of proposition 1, whereby there was submitted to the voters a proposal to issue water and light bonds to the extent of $2,106,-000, for the purpose of "erecting or purchasing a water and light plant," which proposition, as we have seen, was adopted by a very large majority of the total vote cast at the election.   By turning to section 35, it will be seen that the city was authorized to issue bonds for the purpose of erecting and maintaining suitable water and light plants, or for purchasing any water or light plant in operation in said city.   It is also to be noticed that the wording (the language being that last above quoted) of that part of the ballot relating to proposition 1 was not in strict accordance with any of the forms laid down in the statute, for there was none which in so many words provided for an expression of the will of the voters as to the erection or purchase of a water and light plant; that is, for the erection or purchase of a combined plant.   But the thing authorized to be done by the city was the issuance of water and light bonds, no distinction being made, and no authority being expressly given for issuing water bonds or for issuing light bonds as separate instruments, the proceeds of the former to be used for the erection or purchase of a water plant, the latter for the erection or purchase of a light plant.

While we do not decide that bonds could not be so issued,—for that question is not before us,—we are fully warranted in saying that from the language of the act it is clear that it was in contempla--

tion that the proposition to erect or purchase both plants might and could go hand in hand, be acted on together in the council and at the polls, and be treated throughout as if the erection or purchase of one actually involved and made necessary the erection or purchase of the other. Again, we notice a provision of the law that, "in case the city should purchase any existing water and light plant," certain things should be taken into consideration, and provision was to be made for acquiring or assuming all outstanding bonds of the corporation owning such plant in case of a purchase. It was undisputed that a combined plant was in operation in said city when the law was enacted and when the election was held, and, further, that such plant had been offered to the city council prior to the adoption of the resolution calling for an election for a sum not to exceed the amount for which bonds were to be issued; and in the resolution the fact of the existence of the plant was recited.

Because of these facts, and that the general tenor and purport of the law indicates that the submission of a proposition to erect a combined plant was contemplated, and from the express provision of the law just referred to, it is obvious that it was intended and expected that a proposition to purchase an existing water and light plant would be submitted to the electors. We are of the opinion, in view of the existing facts and of the general language of the law, and that part of the same which provided for the acquisition or assumption of bonds already issued by an existing combined plant, in case such a plant should be purchased, that the first, second, and third propositions, as set out in the ballot, were not substantial or fatal departures from the statutory requirements as to how the ballots should read, and that the submission of these propositions was fully authorized if at the same time the other competing propositions were fully and fairly submitted to the voters.

2. As before stated, propositions 1 and 3 were declared carried, while proposition 2 was lost. There were cast, however, but 2,137 votes in favor of proposition 3, and this was less than a majority of "the votes cast at said election" if we are to take the number cast according to the poll lists as the basis for a determination. As it is unnecessary for us to pass upon the question, we express no opinion as to whether the decision of the court below that the proposition was duly carried should be upheld. The point has not

been raised by counsel, and we merely suggest it in passing, in view of the fact that the judgment appealed from must be set aside, and that another election may be held.

3. We fail to see how the electors could have been misled by the use of the words "Yes" and "No" opposite the propositions to be voted on, as they appeared on the ballots. The voter expressed his will by means of a cross mark, and these words, first reading the instruction at the head of the ballot, simply guided and assisted him to mark in accordance with his preferences.

4. We now come to the turning point in the case as we look at it, and this pertains specially to propositions 4 and 7, but incidentally to propositions 5, 6, 8, and 9, which were, so to speak, the beneficiaries of 4 and 7, all of these propositions being defeated. The fourth related to the issuance of bonds to the extent of $2,106,000 for the purpose of erecting or purchasing a water plant only, while 5 and 6 competed for the proceeds of such bonds. The seventh related to the issuance of bonds in exactly the same amount for the purpose of erecting or purchasing a light plant only, while 8 and 9 were in competition for the proceeds. Had the electors wished to vote in favor of erecting but one of these plants, they would have been compelled to vote bonds to the full amount required to buy the existing combined plant. Had they preferred to vote in favor of erecting both of these plants, instead of purchasing the combined plant already in operation, they would have been obliged to vote bonds to the amount of $4,212,000, just double the amount required to purchase the combined plant. Had a majority voted in favor of propositions 4, 7, 6, and 9, they would have authorized the issuance of bonds for the purchase of water and light plants already in existence for twice the amount called for under proposition numbered 1.

We are unable to understand why propositions of this remarkable character, and so antagonistic, should have been incorporated into the resolutions and ballots. A large number of voters who favored the ownership by the city of water and light plants might have been very decidedly in favor of the erection of a new plant or plants, instead of a purchase of the old, if the former could be had for the same amount of money or for a sum not greatly in excess thereof. But because of the amounts specified in propositions 4

and 7, double that specified in 1, they were compelled to vote in favor of the latter, in self-protection.   A great many voters may have been turned away from propositions 4 and 7 with their associate propositions, in fear that, if 4, 7, 6, and 9 carried, the combined water and light plant might be purchased for a sum in excess of that covered by proposition 1.   We are not saying that voters were so influenced; simply that the opportunity was afforded by the way in which the propositions were submitted.   While there is nothing before us indicating what a new plant or plants might cost, or that such could have been erected for what it would have cost to purchase the old, we feel quite safe in saying that propositions from 4 to 9, inclusive, provided for the issuance of bonds and the expenditure of money grossly in excess of the amount needed for the purposes therein specified.   By means of the manner in which the propositions were prepared, and, by ballot, submitted, electors were or might have been forced to vote in favor of the first, although against it, if they could have had the other propositions submitted clearly and fairly.   To place voters in such a predicament was unreasonably and unjustly to deprive them of their rights, and this cannot be overlooked.   If the city council desired to place a proposition to erect a water and light plant or plants fairly and reasonably before the voters, as against a proposition to purchase the existing plant, the propositions should have been submitted so as to allow a free and full expression on the real merits of each. Those voted on did not.

We have covered all of the questions which need to be discussed. The judgment is reversed.