MAX STERN v. CITY OF FARGO, PETER ELLIOTT, AS MAYOR OF THE CITY OF FARGO, AND N. C. MORGAN, AS CITY AUDITOR OF THE CITY OF FARGO.

Opinion filed June 19, 1909.

### Powers of Municipal Corporations — Construction Against.

1. Cities have only the following powers: (a) Those granted in express words. (b) Those necessarily implied or incident to the powers expressly granted. (c) Those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

### Same.

2. Doubtful claims of power, or doubt or ambiguity in the terms used by the legislature, are resolved against the corporation.

### Same — Bond Issue — Constitutional Law — Statutory Construction.

3. The constitution and statutes providing for the issuance of municipal bonds are more strictly construed in actions to prevent their issuance than in actions to prevent their payment after they have been issued and negotiated.

### Same — Bond Election — Notice.

4. Section 2678, Rev. Codes 1905, in enumerating the powers of cities, among other things provides how and for what purpose bonds may be issued, and requires that the question of issuing bonds for the construction or purchase of waterworks shall be submitted to a vote of the electors of the city, at an election, after twenty days' notice, stating, among other things, the purpose for which the bonds are to be issued, and the amount thereof. *Held,* that a resolution of a city council, providing for the issuance of $100,000 in bonds, or such part thereof as may be required, and a notice of an election to submit such issuance to the voters, in the same language as the resolution, did not state the amount of bonds to be voted upon, and that without such statement the question of the issuance of bonds is not fairly presented to the electors, who are entitled to know definitely what is proposed in the way of increasing the indebtedness of the city.

### Same — City Auditor — Ministerial Duties.

5. The duties of the auditor in issuing the notice of such an election are purely ministerial, and such notice must follow the terms and conditions of the resolution authorizing the election.

### Same — Power to Issue Bonds — Delegation.

6. The power to authorize the issuance of bonds is vested in the voters, and they cannot delegate such power to the city council.

**Same — Bond Election — Requisites of Notice.**

7. The object of the notice of election, and the requirement that the amount of the bonds be stated, is to give the voters and taxpayers such information as will enable them to consider, weigh and discuss the merits of the proposition, and to avail themselves of the opportunity so given to acquire information as to the necessity of the proposed expenditure and the amount of the indebtedness necessary to incur to enable the city council to carry out its plans. When the notice fails to state the amount of indebtedness proposed to be incurred by the issuance of bonds, opportunity is not afforded the voters to inform themselves so as to be able to vote intelligently.

**Same — Purpose of Notice of Bond Election.**

8. An election for the issuance of bonds, under the provisions of section 183 of the constitution and section 2678, Rev. Codes 1905, for the construction of part of a waterworks system, on a notice which did not state the amount of the bonds to be issued, is invalid, and the council is not authorized thereby to issue bonds voted.

**Same — Resolution of City Council — Requisites.**

9. A resolution of a city council, providing for an election, and a notice of such an election, under section 2678, Rev. Codes 1905, must state the purpose for which it is proposed to issue bonds.

**Same — Notice of Bond Election — Submission of Propositions Singly.**

10. The legislature, by the provisions which it has made for the issuance of bonds by cities, has not provided for submitting the question of their issuance to the voters in such a manner as to permit only a vote for or against the issuance of bonds for two or more purposes on a single vote.

**Same — Double Question.**

11. Under our system of elections, every voter is entitled to the opportunity to vote for or against any question submitted, separately and independently from his vote for or against any other proposition submitted.

**Same — Test of Double Question.**

12. The test whether questions submitted include one purpose or more is whether the objects for which bonds are to be issued have a natural or necessary connection with each other; and, if they have not, two purposes cannot be made one by verbal connection.

**Statutory Construction — Doubt Resolved Against Fraud and Imposition.**

13. When the meaning of a statute is doubtful, so that either of two constructions may with propriety be adopted by the court, it is the duty of the court to adopt that construction best calculated to protect the public against fraud and imposition, even though in individual instances such construction may work slight hardship.

### Bond Election — Double Question — Statutory Construction — Statute of Doubtful Import.

14. The fact that one construction of a statute of doubtful import, if it be conceded that the meaning of the statute in question is doubtful, would admit of the submission of a question devoid of merit in connection with another of unquestioned merit, and the adoption of a weak proposition by reason of its submission in connection with a meritorious one, furnishes a strong reason for the rule of construction stated in paragraph 11, and this reason applies notwithstanding no question is made in this case as to the good faith or merits of either proposition submitted by the city council.

### Same — Double Proposition — Void Bond Election.

15. A resolution adopted by the city council, providing for an election to vote on the issuance of bonds, and a notice by the city auditor of such election, which state the purposes of the proposed bond issue to be "to defray the cost of building and constructing a new waterworks pumping station and installing therein a new high duty pump and necessary steam boilers, * * * and for the purpose of installing an electric light plant in connection with said pumping station for furnishing street and other lights and power," states two purposes and an election held pursuant to such resolution and notice is illegal, and a majority vote in favor of issuing bonds for the purposes stated does not authorize or empower the city council to issue them.

### Constitutional Law — Debt Limit of Cities.

16. Section 183 of the constitution, and the statute, provide a debt limit, for general purposes of cities, of 5 per cent, with power to incur additional indebtedness equaling 3 per cent of the assessed valuation on a two-thirds vote, making a possible indebtedness for general purposes of 8 per cent. It is also provided that a city, when authorized by a majority vote, may increase its indebtedness, not exceeding 4 per cent, without regard to existing indebtedness, for the construction or purchase of waterworks or constructing sewers, and for no other purpose whatever.

Query: Can a city issue bonds for the construction of waterworks or sewers in such a manner as to necessarily include the amount of such bonds in the 5 per cent or 8 per cent debt limit provided for ordinary purposes, or must they be issued in such a manner as to be included within the 4 per cent provision for the construction of waterworks and sewers? If they must be so issued as to admit of their being included within the 4 per cent special waterworks provision, the connection of an electric light plant, or of any other subject except sewers, with waterworks in the issuance of bonds, furnishes an additional reason for holding the proposed issue under consideration illegal.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Max Stern to enjoin the city of Fargo, and the Mayor and Auditor thereof, from issuing bonds voted for the construction of a pumping station and electric light plant. Judgment for defendants, and plaintiff appeals.

Reversed, with directions to enter a decree in accordance with a prayer of the complaint.

*E. H. Wright,* for appellant.

Substantial compliance with law essential to a valid issue of municipal bonds. Harris on Municipal Bonds, 28.

The submission of two propositions in such form as to preclude a vote on each, renders the election void. People v. Baker 23 Pac. 364; City of Denver v. Hagues 63 Pac. 311; State v. Budge, 14 N. D. 532; 105 N. W. 724. Wilkins v. Waynsboro, 116 Ga. 359; 42 S. E. 767; McBryde v. City of Montesano, 34 Pac. 559; Truelson v. Duluth, 63 N. W. 714; Neelburn v. Cuthburt, 23 S. E. 206; Cain v. Smith, 44 S. E. 5; Supervisors v. Ry. Co., 21 Ill., 337; Gray v. Mount, 45 Ia., 591; Hensly v. City of Hamilton, 36 Ohio Cir. Ct. R. 201.

*W. C. Resser, City Att'y* and *Engerud, Holt & Frame,* for Respondent.

If the purpose of the bond issue is single, and the enterprise a unit, although evolving two results, waterworks and electric light plant, the practice is upheld. Truelson v. City, 63 N. W. 714; Woodbridge v. City, 59 N. W. 296; State ex rel. v. Caffery, 22 So. 756; Heilburn v. Cuthburt, 23 S. E. 206; Ryan v. Orbison, 7 Ohio Cir. Ct. 30; Coleman v. Town, 47 So. 703; Kemp v. Hazelhurst, 31 So. 908.

A mark on a ballot not violating the spirit of the election law, does not nullify the vote. Howser v. Pepper, 8 N. D. 484; 79 N. W. 1018; Perry v. Hackney, 11 N. D. 148; 90 N. W. 483.

SPALDING, J. Section 130 of the Constitution of this state requires the legislative assembly to restrict the powers of municipal corporations as to levying taxes and assessments, borrowing money and contracting debts, and prohibits the diversion of money raised by taxation, loan, or assessment for any purpose, to any other purpose, except by authority of law. Section 183 provides that the

debt of any municipality shall never exceed 5 per centum upon the value of the taxable property therein, but permits any incorporated city, by a two-thirds vote, to increase such indebtedness 3 per cent. on such assessed valuation beyond said 5 per cent. limit, and provides that any incorporated city may become indebted in any amount not exceeding 4 per centum of such assessed valuation, without regard to the existing indebtedness of such city, for the purpose of constructing or purchasing waterworks for furnishing a supply of water to the inhabitants of such city, or for the purpose of constructing sewers, and for no other purpose whatever.

The legislative assembly, in chapter 30 of the Political Code, commencing with section 2632, Rev. Codes 1905, has provided for the organization and incorporation of cities. Article 4 of said chapter, commencing with section 2678, enumerates the general powers of city councils in 78 paragraphs or articles. Paragraph 5 gives it power to borrow money on the credit of the corporation, for corporation purposes, and to issue bonds therefor in such amounts and forms, and on such conditions, as it shall prescribe, and provides that no such city shall become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, exceeding 5 per cent. of the taxable property therein. Then follows the proviso, contained in the section of the Constitution, quoted, relating to an increase of such indebtedness, on a two-thirds vote, of 3 per cent., and the further proviso quoted relating to indebtedness in any amount, not exceeding 4 per cent., for the purpose of constructing or purchasing waterworks, with the additional power to issue bonds therefor, and the further proviso that the city, before or at the time of issuing any of the bonds mentioned, or incurring the indebtedness for which the same are to be issued, shall provide for a direct annual tax sufficient to pay the interest on such debt or bonds when it falls due, and to pay and discharge the principal when the same becomes due, and that such provisions shall be irrepealable until such debt is paid. The final paragraph of the section provides "further that none of the hereinbefore mentioned bonds shall be issued, either for special or general purposes, except as by law otherwise provided unless at an election, after twenty days' notice in a newspaper published in the city stating the purpose for which such bonds are to be issued, and the amount thereof, the legal voters of said city, shall, by a majority vote, determine in favor of issuing such bonds." Paragraph 11 of section 2678 gives

the council power to provide for the lighting of streets, and to provide for the furnishing of lights to the inhabitants of the city, and paragraph 75 to purchase and erect, lease, rent, manage, and maintain any system, or part of system, of waterworks, hydrants, and supply of water, telegraphing, fire signals, or fire apparatus that may be of use in the prevention and extinguishment of fires, and to pass all ordinances, penal or otherwise, that shall be necessary for the full protection, maintenance, management, and control of the property so leased, purchased, or erected.

The city council of Fargo passed, and the mayor approved, on the 1st day of March, 1909, a resolution as follows:

"Be it resolved, by the city council of the city of Fargo:

"That, at the annual election, for elective officers for the city of Fargo, to be held on Monday, the 5th day of April, 1909, there shall be submitted to the legal voters of said city, the question, whether or not one hundred thousand dollars ($100,000.00), or such part thereof as may be required, in bonds of the said city, in denominations of one thousand dollars ($1,000.00), each, to mature as follows, to wit: Thirty thousand dollars ($30,000.00) thereof in ten years from date of issue; thirty-five thousand dollars ($35,000.00) thereof in fifteen years from date of issue and thirty-five thousand ($35,000.00) residue thereof in twenty years from date of issue, and to bear interest at the rate of four per centum per annum, payable semi-annually, shall be issued by the said city of Fargo for the sole purpose of defraying the cost of building and constructing a new waterworks pumping station, and installing therein a new high duty pump and necessary steam boilers and other needed machinery and appliances, and for building, constructing and equipping of a filtration plant in connection with said pumping station, and for paying such portion of the cost of constructing a water main of sufficient capacity, extending from the present location of the waterworks pumping station in Island Park to the selected location for the new pumping station in block two (2) of South Park addition to the city of Fargo, over and above such part of the cost thereof as can be assessed against the property along the route of the said water main, for furnishing to the inhabitants of the said city of Fargo an adequate and pure supply of water; and for the purpose of installing an electric light plant in connection with the said pumping station for furnishing street and other lights and power.

"That the city auditor be, and is hereby directed to have printed on the regular ballots for such annual election the following: 'For issuing bonds for waterworks, filtration and electric light plants and extensions' and 'Against issuing bonds for waterworks, filteration and electric light plants and extensions.'

"That the city auditor be and he is hereby directed to give legal notice that such question will be submitted to the legal voters of the said city of Fargo at such annual election, by publication of this resolution in the official newspaper of the city of Fargo and in the other daily newspapers of the said city, for twenty days next preceding the said election, as required by law."

And the city auditor, in the notice for the annual election of the city of Fargo, included the following notice:

"Notice is hereby given that the annual election in and for the city of Fargo, Cass county, North Dakota, will be held on Monday, the fifth day of April, 1909, at the following polling places in the several wards of the city, to wit:   *   *   *

"Said election will be held for the election of one alderman in each of the seven wards of the city, and there will also be presented to the electors of the city for their votes the proposition of the issue by the city, of $100,000.00 four per cent. bonds, or such part thereof as may be required, for the construction of a new waterworks pumping station and filtration plant, etc., and for the purpose of installing an electric lighting plant in connection with said pumping station, which proposition is more fully set forth in a certified copy of the resolution adopted by the city council, which is published elsewhere in this issue of this newspaper."

The question so submitted received more than a majority of the votes cast on the subject of bonds at such election, and thereafter the city council passed, and the mayor approved, an ordinance providing for the issuance of such bonds. The ballot contained the question, "Shall the city of Fargo issue $100,000.00 or such part thereof as may be required, in bonds of said city?" reciting the denominations, dates of payment, rate of interest, and the purposes stated in the resolution. The appellant brought this action, setting out these facts, and asking that all the proceedings relating to such bond issue, including the tax levy which was provided for in the ordinance mentioned, be adjudged null and void, and for an order enjoining and restraining the mayor and auditor from executing or delivering any of the proposed bonds, and the auditor from cer-

tifying the proposed tax levy to the county auditor. The respondents, the city of Fargo, the mayor, and auditor, interposed a general demurrer to the appellant's complaint. The trial court sustained such demurrer, and plaintiff appeals from the order sustaining it.

Three questions are presented for our consideration by this appeal: (1) That the notice of election does not specify the purpose for which the bonds are to be issued; (2) that the notice of election does not state the amount of bonds that are to be issued; (3) that by reason of the constitutional and statutory provisions heretofore quoted, providing for the issuance of bonds to an amount not exceeding 4 per cent of the assessed valuation, for the purpose of constructing or purchasing waterworks or constructing sewers, and for no other purpose whatever, and to issue bonds therefor, the proposition to issue bonds for the construction of waterworks may not properly be coupled with a proposition to install an electric light plant.

We shall consider the first and third of these propositions together. Preliminary to the consideration of these objections we may say that it is well settled that incorporated cities have only the following powers: (1) Those granted in express words; (2) those necessarily implied or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable; (4) that doubtful claims of power, or doubt or ambiguity in the terms used by the Legislature, are resolved against the corporation. Voss v. Waterloo Water Company, 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. Rep. 201, and cases cited; City of Champaign v. Harmon, 98 Ill. 491; Thompson v. Lee County, 3 Wall. 327, 18 L. Ed. 177; Minturn v. La Rue, 23 How. 435, 16 L. Ed. 574. It may also be stated as a rule that in considering the legality of a proposed bond issue by a city, courts construe the constitution and statutes more strictly than they are construed in determining the validity of bonds already issued and disposed of. 21 Am. & Eng. Ency. of Law, 33, 45.

1. Neither the resolution authorizing the election, nor the notice published by the auditor, states the amount of the proposed bond issue. The language is "$100,000 or such part thereof as may be required." The members of this court are agreed that this failure to state the amount of bonds which it was proposed to issue invalidates the proceedings. The statute requires the notice to state the

amount of the proposed issue of bonds. The issuance of this notice by the auditor is a ministerial act, and he derives his authority in the premises from the action of the city council, and we conclude that it is essential to the legality of the proceedings that both the resolution of the council and the notice of election state definitely the amount of bonds for and against which the vote is to be taken. Without such statement the question is not fairly presented to the electors. They are entitled to know definitely what is proposed in the way of increasing the indebtedness of the city. Under the notice published, based on the resolution of the council, that body may decide to issue any part of the $100,000 in bonds. The elector may desire to oppose the proposition of the amount so stated definitely were larger or smaller. The proceedings are admitted to be taken under a statute vesting an express power in the council. Its only power to issue bonds is derived from the statute, and any condition which the statute imposes precedent must be complied with fairly and substantially, and the voters are not empowered to delegate the power to fix the amount of the issue, which belongs to them, to the city council. In Schultze v. Manchester, 61 N. J. Law, 513, 40 Atl. 589, an election having been held at which it was voted to authorize the township committee to issue bonds to an amount not exceeding $5,000, under a statute in effect like ours, the court held that the failure to specify the amount to be issued was a fatal defect, and that no such resolution, with discretionary power to the township committee as to the amount to be issued, could be legally submitted, or be of any effectiveness if submitted and adopted, and the court, among other things, says: "The resolution clearly is not one provided by the statute to be submitted to the legal voters. The voters were to determine the amount by voting for a resolution definitely fixing the amount or defeat any issue of bonds by voting against it. They were not to be called to delegate the power to the township committee to issue, in their discretion, bonds to the amount of $500 or $5,000. Under this statute no such discretionary power could be vested in the township committee. The authorities fully bear out this proposition that, when such power exists, under the statute, in the legal voters to order any issue of bonds to a certain fixed amount, that power cannot be delegated to another body. The power was vested here solely in the voters, and they could not, as they did, by voting upon this resolution submitted to them, under the statute, for their determination, delegate the

power to the township committee of exercising a discretion as to the amount. After the election, upon a proper resolution, the action of the township committee could only be ministerial so far as the amount to be issued was involved"—and cites many authorities in support of its conclusion.

In State ex rel. Lexington & St. Louis R. R. Co. v. Saline County Court, 45 Mo. 242, the Supreme Court of Missouri passed upon this question. A law authorized the court to subscribe stock in a railway company, but provided that the subscription should not be made unless a majority of the taxpayers should vote for it, specifying the amount. The court in submitting the question called on the electors to vote for or against an amount not exceeding $70,000. The court held that no amount was specified by the vote; that the question submitted left the precise amount undetermined. To the same effect, see City Council v. Dawson Waterworks Company, 106 Ga. 696, 32 S. E. 907, and Hillsborough County et al. v. Henderson et al., 45 Fla. 356, 33 South. 997. In the latter case the law provided that the resolution submitting the question of issuing bonds to a vote should determine the rate of interest to be paid on the bonds. The resolution submitted provided for a rate of interest of not more than 4 per centum per annum. The court held that this was not a substantial compliance with the statute, and that the fact that the proposition was carried by popular vote did not cure the defect, and that the statute had vested the board with no authority to ask a waiver by the voters. The court says: "If the board can lawfully reserve for future determination by itself the interest which the bonds shall bear, so can it reserve any or all of the other matters required to be fixed in the resolution which it submits for ratification." See authorities cited in opinion. It may be added that the Florida court meets some of the arguments in favor of the validity of the bonds by statements which are apropos in the case at bar. It held that while the maximum rate of interest permitted by the resolution providing for the bonds was so low that it was possible that the form of the resolution in stating 4 per cent. as a limit rather than as a fixed rate of interest, did not materially affect the election; that this however, was mere matter of conjecture, and did not affect the law of the case; that the fixing of a maximum rate implies the possibility of issuing the bonds at a lesser rate; and that, in principle, there was no difference between that resolution and one fixing a greater maximum rate, with a correspondingly greater range of

discretion in determining that to be adopted. The bonds have not been issued. The rights of no purchaser for value are involved, and none of those considerations exist which compel courts to overlook irregularities in the endeavor to protect such purchasers.

In Smith et al. v. Mayor & Council of Dublin et al., 113 Ga. 833. 39 S. E. 327, an election, at which was submitted the question of issuing bonds in the aggregate amount of $25,000, not more than $20,000 of the amount realized therefrom to be used for building a schoolhouse, and not more than $5,000 for enlarging the light and water plant of the city, and the surplus, if any, to be used in such manner as the mayor and council might see fit, was held invalid because not meeting the legal requirement that a notice of this character should specify the amount of bonds about to be issued, and for what purpose. The court held that the notice neither stated the amount nor the purpose.

Amang the reasons for requiring the amount and other particulars to be stated in the resolution and notice, and particularly in the notice, may be mentioned that it is from such notice and resolution that both the taxpayers and voters derive their knowledge that the election is to be held on the question of issuing bonds, and they are entitled to such information on the subject, including a statement of the amount of the proposed issue, as will enable them to consider, weigh, and discuss the merits of the proposition, and to avail themselves of the opportunity so given to acquire information, not only as to the necessity of the proposed expenditure, but as to the amount necessary to carry out the plans of the council and to accomplish the purpose sought. It is perfectly clear that, in the absence of at least as specific information as is required by the statute, complete opportunity is not afforded those interested to so investigate the various questions as to enable them to vote intelligently. Other authorities might be cited in support of our conclusion, but we deem it unnecessary to cite them. Our attention is called to only one authority apparently holding to the contrary. In Railway Company v. Village, 63 Neb. 624, 88 N. W. 661, the Supreme Court of Nebraska held that a similar submission of the statement of the amount was sufficient. Respondent seems to rest its case, as relates to this point, on that authority, but the court of Nebraska expressly states in the opinion that it has been unable to find any law of that state requiring a specific amount to be stated. We find some other authorities to the same effect, but on examination it ap-

pears that they are, like the Nebraska case, based upon statutes which do not require the amount to be stated.

2. Our decision might rest upon our conclusion on the preceeding point, but other questions have been raised; and, inasmuch as the city of Fargo will likely hold another election on the subject, and will not wish to proceed in the dark as to such questions, we will consider and pass upon them. We do so for the further reason that the state is interested in having these questions set at rest. The board of university and school lands desires to purchase any bonds issued by the city of Fargo, and is in the market for bonds issued by other municipalities in this state, and at its request, through the Governor, the Attorney General appeared in the case, made an argument, and submitted a brief.

With respect to the resolution and notice calling for the issuance of bonds for the double purpose, namely, waterworks and electric light plant, and requiring a vote on the two subjects in one, and that this is not submitting it in such a manner as to permit the voter to vote for or against either proposition independently of the other, the authorities are in apparent conflict. In view of this fact, and of the further fact that the bonds have not been issued, and that it is more important that a safe rule should be announced by this court for the guidance of municipalities in submitting such questions than that either line of authorities should be followed, we feel at liberty to adopt that rule, based upon those principles which, to us, appear most nearly in consonance with the statute, the spirit of our institutions, and which will best protect the voter in the exercise of his franchise and the municipality against possble fraud. The authorities are nearly unanimous to the effect that a proceeding by which two questions are submitted, when such questions or their subjects and purposes are not naturally related or connected, is invalid, and renders any election at which such questions have been so submitted invalid. 21 Am. & Eng. Ency. of Law, 47; State ex rel. City of Bethany v. Allen, 186 Mo. 673, 85 S. W. 531; People v. County of Tazewell et al., 22 Ill, 147; Williams v. People, 132 Ill. 574, 24 N. E. 647; Board of Supervisors v. Miss. & Wabash Ry. Co., 21 Ill. 338; Village of Hempstead v. Seymour et al., 34 Misc. Rep. 92, 69 N. Y. Sup. 462; Village of North Tonawanda v. Western Transportation Co., 16 Abb. Prac. (N. S. N. Y.) 297; City of Denver et al. v. Hayes et al., 28 Colo. 110, 63 Pac. 311; People v.

Baker, 83 Cal. 149, 23 Pac. 364, 1112; McBryde v. City of Montes-
ano et al., 7 Wash, 69, 34 Pac. 559; Cain et al., v. Smith et al., 117
Ga. 902, 44 S. E. 5; City of Leavenworth et al. v. Wilson, 69 Kan.
74, 76 Pac. 400; Truelson v. Mayor of Duluth, 61 Minn. 48, 63 N.
W. 714; Gray et al. v. Mount et al., 45 Iowa, 591; Elyria Gas &
Water Co. v. City of Elyria, 57 Ohio St. 374, 49 N. E. 335; Farmers'
Loan & Trust Co. v. City of Sioux Falls et al. (C. C.) 131 Fed.
890—are all squarely to the effect that the submission of double
questions in such a manner as to require a vote for or against both
is illegal. We shall not take the space to review these authorities at
length, or the reasons which the several courts advance in support of
their conclusions. All the reasons given by them are applicable in
the case at bar.

The contention in the case at bar is that, because the resolution
and notice read, "and for the purpose of installing of an electric
light plant in connection with the said pumping station for furnish-
ing street and other lights and power," they present only a single
question or purpose, and do not come within the rule laid down in
most of the authorities referred to above. It is contended that the
two purposes or objects, namely, a pumping station and electric light
plant, are made one by the use of the phrase "in connection." No
serious contention is made that without the use of such words an
electric light plant and waterworks or pumping station would be
separate and distinct from each other. It appears to us that sub-
jects which are so different, and which have no natural or neces-
sary connection, cannot be made one, and the law and the reasoning
of the courts evaded by a play upon words. A verbal joining does
not connect them in fact, when they are connected neither naturally
nor by statute. It is contended that the city will be enabled to econ-
omize in its proposed enterprise by connecting the two; that they
may be placed under the same roof; that the same boilers may be
used for pumping and furnishing light; or that, if electricity is pro-
cured from private parties and transmitted to the plants, it may be
used for power for the pumping station. Courts are frequently
required to announce general principles and rules in construing
statutes, and for the guidance of municipalities as well as private
parties. When the meaning of the statute is doubtful, so either of
two constructions may be adopted, it is the duty of courts to follow
those which to them seem to be the best reasons, and those best
calculated to protect the public against fraud and imposition, and

which will best promote the general welfare. Any such general rule may, in individual cases, work hardship, but even so, this fact does not militate against the wisdom of well-established rules of construction. We have no doubt that in the present instance it might be a little more convenient for the authorities of the city of Fargo to lump the expenditures necessary for the construction of the two plants, and in some measure combine them, without separating their estimates or determining in advance the approximate amount necessary to invest in each project, in other words, if not proceeding by guess itself, permitting the voters to do so; but, even if they are built in connection, even if the words "in connection" are considered to mean something more than a mere nominal connection, we see no serious obstacle in the way of determining beforehand, at least approximately, how much it is necessary to provide for investing in each separate enterprise. After that is done, and the questions are submitted to the voters and approved, there is ample time for the council to determine whether the projects shall be united or separated, and without any material prejudice to the city or its inhabitants. Among the reasons why both propositions should not be submitted to a single vote are that our whole election system, whether it relates to candidates or public improvements or works, is built up and founded on the fundamental principle that every elector shall be given the opportunity to vote for or against any candidate, or any proposition, independent of and separate from his vote for or against any other candidate or proposition. No one would seriously argue that an election was fair which only admitted of the voter voting for or against all the candidates on any one party ticket, and inclosing all the names on one party ticket in a bracket would not make such a proceeding valid. It is equally important that the voter be given the same opportunity in voting on questions not relating to candidates. If two propositions can be joined in such a manner that the voter must vote for or against both, it admits of the submission of a question devoid of merit in connection with one for which there is a pressing demand, and of a weak proposition being carried on the strength of a worthy one.

In the case at bar no question is made as to good faith or the merits of either proposition. It is no part of the province of this court to determine the merits, but it can readily be seen that some voters may feel that an urgent necessity exists for an improved water system, and little or none for an electric light plant, or vice

versa. Some voters may think and feel that increasing the indebtedness for the construction of a pumping plant and filtration system, which are naturally connected, is the only burden which should be, at the present, added to those already being carried by the taxpayer. We have no doubt that most of the residents of Fargo feel that some method of filtration and improvements in the water system are almost questions of life and death, but, if so, this only emphasizes the wisdom and necessity of submitting the questions separately. The statute requires the notice to state the purpose for which the bonds are to be issued. We have no doubt that a pumping station and a filter each constitute part of one purpose, and an "electric light plant" another purpose; but, even if they are not technically two purposes, the same reasons are still applicable, and their force is not diminished. The question is, not one of connecting by words, but, identity of purpose, or can one naturally be operated without the other? We are satisfied that the legislative intent was to separate those enterprises or purposes. This is partially apparent from the fact that they are, as we have before indicated, authorized by separate with distinct paragraphs of the section of the Code defining the powers of city councils, and were enacted at different sessions of the Legislature, and that the power of the council relating to waterworks is far broader than its power relating to lighting. See paragraphs 11 and 75, § 2678, Rev. Codes 1905. Most of the authorities cited by respondent supporting the order of the trial court are based upon statutes which in terms connect the two subjects, or the courts, as shown by their opinions, gave it little or no consideration.

In Woodbridge v. City, 57 Minn. 256, 59 N. W. 296, the city charter provided for water and light bonds, and the question does not appear to have been raised as to whether they could be combined. The same is true of State ex rel. Caffery, 49 La. 1152, 22 So. 756. Coleman v. Town (Ala.) 47 South. 703, appears to be in point, but an examination discloses that the subjects are connected by statute. This is conceded by respondent. It is therefore not an authority. In Ellingwood et al. v. City of Reedsburg, 91 Wis. 131, 64 N. W. 885, it was held that the city had the right to issue bonds for water and light plants, but the question of combining was not raised, and the court was passing upon a far more comprehensive statute than our own. In Heilbron v. Cuthburt, 96 Ga. 312, 23 S. E. 206, we find no discussion of the point. People v. Counts, 89 Cal. 15, 26 Pac. 612, is not an authority. The bonds were for the con-

struction of two highways, but they both united with another, and therefore the question presented related to a single purpose, that of making a continuous highway. Linn v. City, 76 Neb. 552, 107 N. W. 983, holds an issue of bonds legal for building separate engine houses and buying sites, but this only presents one purpose. The Tonawanda and Hempstead cases, supra, are directly in point. In the former the principle is announced that there must be a necessary connection between the different objects to make their submission to a single vote legal. In the latter case the court lays much emphasis upon the fact that the subjects of waterworks and lighting system were dealt with in the statute separately, and the court says: "To join in the resolution two or more objects by words, so that they cannot be acted upon separately, compels the taxpayer to vote for or against both, although he may be in favor of one and opposed to the other. He is thus deprived of his freedom of choice"—and holds that waterworks and a lighting system are not related of necessity, and that, without a separate specification of the amount to be applied to each, the resolution submitting the question of issuing bonds for waterworks and a lighting system was idefinite as to purpose, and at variance with both the letter and spirit of the statute, which required the ordinance, or the resolution under which it was proposed, to contract a debt for village improvements, to specify the particular improvement to be made and the amount to be raised therefor.

In the Leavenworth Case, supra, the Kansas court says: "The statute reserves a large and clearly defined discretion in the matter to the people themselves. No plan involving the issuance of bonds can be carried out without their sanction. Even though the mayor and council may contract, they cannot pay by means of bonds unless the people approve. Every arrangement for indebtedness which the mayor and council may make involving city bonds must include an appeal to the ballot box, and must fail if the ballot box be found to contain a majority of adverse votes. This discretion of the taxpayer the mayor and council cannot exercise and cannot control. Since, therefore, no bonds may be issued for any purpose, or for any set of purposes, unless the people be consulted and give their consent, every voter must have a fair opportunity to register an intelligent expression of his will. This the official ballot failed to provide." In Cain v. Smith, supra, the court says: "If the General Assembly was allowed to submit two, three, or more propositions

at one time in connection with the question of incurring a debt, and require the citizen to vote for or against all, the question of incurring a debt would no longer be left to the will of the qualified voters, but would be remitted to the subtlety and ingenuity of those interested and usually influential in passing local legislation, in combining together various matters, which might have the effect to bring about a vote in favor of bonds when it might not have been brought about if the single issue had been submitted to a vote." It might well be inquired whether, in the case at bar, the city authorities have not exercised considerable of the ingenuity referred to in so wording the resolution and notice as to appear to submit only one question or proposition, when in fact submitting two, in such a manner that the voter has no opportunity to exercise his judgment on them independently.

In City of Denver et al. v. Hayes et al., supra, the officers of the city of Denver were acting under a law almost identical with ours, and submitted the question of issuing bonds for different purposes to a vote in the same manner. It says: "That the action of the city council was fundamentally wrong we have not the slightest doubt. The purpose of the framers of the Constitution, which they expressed in the section under consideration, and the object of the General Assembly which is embodied in the city charter, were to prohibit municipal authorities from creating a debt for municipal purposes, and from issuing bonds, unless a majority of the legal electors of the city gave their consent thereto. By the proceedings under review no opportunity was given by the city council to the electors to express their will as to incurring a debt for any particular purpose, and the voice of the electors has never been heard. Neither the constitutional limitation nor the statutory provisions expressly declare that only one purpose may be submitted at the same election, nor that, if more than one purpose may be thus submitted, each shall be separately stated. But the object of neither can be attained, and effect to the language in which they are expressed cannot be given, unless such purposes be separately stated, and the amount proposed to be applied to each particular purpose designated. This must be done, not only in the ordinance which provides for the submission, but in the election notice; and the ballots must be so prepared that every elector may declare his choice as to each purpose, and the amount proposed to be applied thereto

—20—

must also be stated.  To combine several distinct and independent purposes in one proposition, without specifying the amount which is to be devoted to each, is a clear evasion of the law, and, if permitted, would fritter away the safeguards thrown  around  such transactions."

In Gray v. Mounts, supra, is found a very lucid explanation of this doctrine, and the court, among its observations on the subject, remarks: "The next matter urged against the validity of the proceedings is the union of two objects, and two separate appropriations for distinct objects, in one proposition, so that the elector could not vote for one and against the other.  We think this presents a fatal objection to the legality of the proceedings.  The question to be submitted to the voters was not simply whether it was their will to appropriate the fund, but there must be an object for the appropriation in order to constitute the proposition to the voted upon.  The object is of the essence of the proposition.  This cannot be denied. The appropriation for a given object is the proposition submitted, If there be two objects, and a specified amount of funds to be devoted to each, it is very plain that there are two propositions submitted at the same election.  If they are submitted together, it is very clear that the voter cannot vote for one and against the other.  He must vote against both, whereby he may defeat one, the success of which he desires, or he must vote for both, whereby he may cause the success of one which he desires to be defeated. If he fails to vote, he may thus aid in causing the defeat of his favorite measure, and the adoption of the one he opposes.  He has thus no liberty of choice.  The plan of submitting the questions, for there are two, resembles more the common device of an auctioneer in disposing of worthless goods, whereby a good article is mingled with them and made to draw bids, or the cunning tricks of the gamesters to induce wagers of the unwary, rather than the open, direct, and fair manner that always should prevail in elections by the people.  The very letter, as well as the spirit, of our election laws condemns this plan.  It has never been heard of that electors were, by any plan, denied the right of choosing one, and rejecting another, candidate for office, to be voted for at the same election."

An examination of the authorities satisfies us that the conflict is more apparent than real.  We are, in addition to the reasons already referred to, impressed with some others which we think serve to reinforce the contention that they are separate purposes.

These questions may not be controlling, but are nevertheless of considerable force. Section 130 of the Constitution, supra, requires the legislative assembly to prohibit the diversion of money raised by taxation, loan, or assessment for any purpose, to any other purpose, except by authority of law. The submission of the question in the manner in which it was submitted necessarily commingles the funds obtained by the loan contemplated, and in spirit violates this constitutional provision, without authority of law. As seen, the Constitution and statute provide for a debt limit for general purposes of 5 per cent. and an additional amount equaling 3 per cent of the assessed valuation on a two-thirds vote, making a possible indebtedness for general purposes of 8 per cent. It was also provided that any city, when authorized by a majority vote, may increase the indebtedness, not exceeding 4 per cent., without regard to existing indebtedness, for the construction or purchase of waterworks, or constructing sewers, but for no other purpose whatever. It may well be questioned whether this provision does not contemplate that indebtedness for waterworks or sewers must be incurred in such a manner, at least until the 4 per cent. limit is reached, as to leave the city free to exercise its right to incur the prescribed indebtedness for general purposes to the full limit, independent of waterworks or sewer indebtedness. It is clear that the combination of indebtedness for electric lights with that for waterworks precludes its inclusion in the 4 per cent. allowed for waterworks indebtedness, and reduces to that extent the power of the city given by the Constitution to incur indebtedness for carrying on its other affairs, and that a state of facts may readily arise whereby, by reason of doing this, a city might be seriously crippled in the conduct of its affairs as a municipality and agency of the state. Let us suppose a city with an assessed valuation of $1,000,000. It has the right to issue bonds for waterworks and sewers in the sum of $40,000. It has the power to issue bonds on the vote of a majority of the voters, for general city purposes, in the amount of $50,000. It issues bonds in the amount of $40,000 for waterworks and electric lights. It thereby exhausts its constitutional credit for general purposes, without a two-thirds vote, within $10,000. The assessed valuation of the city decreases $200,000. It is clear that the city would then be left with no power, except on a two-thirds vote, to make use of any of the credit with which the Constitution has clothed it, for general purposes, and the $40,000 created for waterworks purposes would

still be unused, and the city might be rendered powerless to provide for its necessary running expenses. Such a condition is entirely within the possibilities. It might issue waterworks bonds to the full amount of 5 or 8 per cent. in the first instance, and leave nothing for general purposes or emergencies.

In People v City Council, 23 Utah, 13, 64 Pac. 461, the Supreme Court of that state held that, under similar constitutional provisions, the power to incur an indebtedness for water, light, and sewer purposes was absolutely within its own limits, and that the debt created by virtue of a 4 per cent. provision similar to ours for the three purposes named was additional to that permitted for general purposes, and that the purpose of the framers of the Constitution, among others, was to separate the general debt power from the special debt power.

We think it at least questionable and worthy of consideration whether the city can issue bonds intended for waterworks that they will necessarily fall within, or be included in, the ordinary 5 or 8 per cent. debt limit of the Constitution, and in any event until it has exercised its right and power to issue them to the limit provided of 4 per cent. for the special purpose. This is suggested, but as it is not necessary to determine it in this case, and as counsel saw fit to leave the court without enlightenment, we leave it undecided. The order sustaining the demurrer is reversed, and the district court directed to enter a decree in accordance with the prayer of the complaint. All concur.

Morgan, C J,, not participating.