[No. 10407. Department Two. June 25, 1912.]

JAMES TULLOCH et al., Appellants, v. THE CITY OF SEATTLE et al., Respondents.[1]

MUNICIPAL CORPORATIONS—INDEBTEDNESS—BONDS—SUBMISSION TO VOTERS—SEPARATE PURPOSES. The submission to the electors of a bond issue for municipal purposes is not illegal as combining several distinct and unrelated objects or purposes, which must be submitted separately, where the two purposes of the bonds was to provide funds for the purchase of existing street railways, or, in the alternative, for the construction of parallel lines, in the discretion of the municipal officers; since they are but two naturally related parts of the single purpose of acquiring a municipal street railway.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 15, 1912, dismissing an action for an injunction, after a trial to the court. Affirmed.

*Thos. R. Horner,* for appellants.

*James E. Bradford* and *Howard D. Hughes,* for respondents.

*Peters & Powell, amici curiae.*

[1] Reported in 124 Pac. 481.

MORRIS, J.—This is an action in which it is sought to restrain the issue and sale of bonds, amounting to $800,000, authorized by the voters at an election held in the city of Seattle March 7, 1911. The money represented by the bonds is to be used in the acquiring of a municipal street railway system. The validity of the bonds is attacked upon the ground that the proposition by which they were submitted to the vote of the people contained two separate and distinct purposes, and the election in which the bonds were carried was, for this reason, invalid. The action was dismissed in the court below, and plaintiffs have appealed.

This question has been before this court in several cases, and it has uniformly been held that several distinct, unrelated, and independent objects or purposes must be separately submitted. *McBryde v. Montesano*, 7 Wash. 357, 34 Pac. 559; *Blaine v. Seattle*, 62 Wash. 445, 114 Pac. 164; *Blaine v. Hamilton*, 64 Wash. 353, 116 Pac. 1076, 35 L. R. A. (N. S.) 577. It must, therefore, be determined whether, under the authority of those cases, the submission of this bond issue to the people was in such a form as to render it invalid.

On January 13, 1911, the city council of the city of Seattle passed an ordinance entitled:

"An ordinance declaring the advisability of a city electric railway on Rainier avenue and other streets, avenues and ways, and providing for the same, specifying and adopting the system or plan proposed, declaring the estimated cost thereof, as near as may be, and providing for the submission of such system or plan and the incurring of an indebtedness therefor, to the qualified voters of the city, for their adoption and assent thereto, or for their rejection thereof, at a special election to be held on the day of the general city election on the 7th day of March, 1911." Ordinance No. 26,069.

Section 2 of the ordinance defines the system or plan of electric railway to be acquired by the funds to be voted. The route of this railway, the specific streets it is to occupy,

and its termini, are specifically set forth. Section 3 estimates the cost of the proposed railway at $800,000, and the following section provides for the incurring of a general indebtedness in the sum of $800,000, and the issuance of bonds therefor for the purchase, acquisition, or construction of the railway along the proposed line. It is further provided that:

"Wherever any portion of the routes hereinbefore designated is found to be occupied by any existing electric railway, privately owned right of way, track or tracks, any of the facilities or appurtenances used in the operation of the same, and such a right of way, tracks, facilities and appurtenances, or any of them, are in the judgment of the board of public works suitable and necessary for use as part of the electric railway system or plan hereinbefore specified and adopted, the same shall be appraised at a fair and just valuation by the board of public works."

The ordinance then authorizes the city to purchase such existing suitable tracks if, in its judgment, the railway system can be best acquired by the purchase of such tracks. Such purchase is, however, not required, but is discretionary, the city being empowered, in case it decides not to purchase such existing lines, to construct and lay parallel tracks. These two provisions for the purchase of existing street railway lines, or in case such purchase be deemed not wise, the construction of a parallel line, are the two alleged several, distinct, and independent purposes that render the submission of the proposition to the people invalid. We do not so regard them.

The case is unlike *Blaine v. Seattle, supra,* relied upon in support of appellants' contention. In that case an election was held pursuant to an ordinance submitting to the vote of the people a proposition to issue bonds for eight several and distinct purposes aggregating $421,000. These separate purposes were $57,500 for sites for fire houses; $50,000 for site for city stables; $173,500 for the construction of fire houses; $5,000 for a combined fire house and

dock; $10,000 for a police sub-station; $25,000 for an isolation hospital; $50,000 for a bridge on Spokane avenue; and $50,000 for a bridge on Westlake avenue. These eight distinct propositions were submitted as one in such a manner that the voter was compelled to vote for or against all of them, and it was held that the propositions contained nothing in common, nor were they so related as to lead any voter to either favor or disfavor all eight measures. For this reason, the voter had no liberty of choice as between the measure he favored and the one he disproved of; in order to obtain the one, he must vote for the other. There was, therefore, no way of determining the individual choice of the voter, and the scheme was held contrary to the letter and spirit of our election laws.

No such scheme confronts us in this case. Here we have but one object to be attained by the proposition submitted to the voter upon which he is to express his assent or dissent, and that object is municipal ownership of street railways. It is true the proposition provides for the exercise of a discretion on the part of the public officials as to whether, in cases where the route determined upon is along and upon streets where privately owned and operated street railway systems now exist, it will be better to acquire such existing system by purchase or to lay parallel tracks. This provision does not, however, destroy the unity of the proposition submitted to the voter—shall the city operate a street railway system along a designated route, and for such purpose issue its bonds for the sum of $800,000? Having determined that it shall do so, and for that purpose may expend this sum of money, the unity of the proposition is not disturbed by vesting in the municipal officers the discretion in given cases to acquire existing lines by purchase or to construct parallel lines, as the best interest of the city may advise. As is said in *Blaine v. Hamilton, supra,* the test, where this vice of submitting several purposes as one is suggested, is, "Are the several parts of the project so related that united they

form in fact but one rounded whole?" It would be difficult
to determine that the acquirement of a part by purchase of
existing railway lines, and the original construction of
another part, were not so related as to form in fact but one
rounded, whole, and that, municipal ownership of street rail-
way lines.

The object of the rule preventing the submission of several
and distinct propositions to the people united as one in such
a manner as to compel the voter to accept or reject all, is to
prevent the joining of one local subject to others in such a
way that each shall gather votes for all, and thus one meas-
ure, by its popularity or its apparent necessity, carry other
measures not so popular or necessary and which the people,
if granted the opportunity of separate ballot, might defeat.
The only measure here upon which the voter is called upon
to express an opinion is his belief, or lack of it, in municipal
ownership of street railways. No other measure is submitted
to him which he is compelled to assent to against his better
judgment in order to express his approval of municipal
ownership. For this reason, the authorities relied upon by
appellant do not appeal to us as being in point. There is
certainly no connection between this proposition as sub-
mitted to the people, and the propositions condemned as
separate and distinct in *McBryde v. Montesano*, and *Blaine
v. Seattle*.

In *Clark v. Los Angeles*, 160 Cal. 30, 116 Pac. 722, the
proposition submitted included the construction of general
electric works and the acquiring of lands, water rights,
rights of way, and other property to be used in connection
therewith. It was attacked, as here, upon the ground that
it included two separate and distinct objects. This was
denied by the court, holding,

"This states but a single object and purpose, namely, the
establishment of the municipal improvement described. In
order to accomplish this purpose and secure this object,
many things were, of course, necessary to be done, and they

are also stated in general terms in the question. But by the question stated, the money obtained from the proposed bonds is not to be used for any of the physical objects mentioned in the more detailed description, unless they are necessary for the principal purpose and object; that is, the works for supplying the city and its inhabitants with electricity. The words 'acquiring and constructing' do not express the dual purpose of acquiring one improvement of this kind and constructing another with the money obtained. They indicate the single purpose of acquiring all the property that may be found necessary for the proposed works, even including water rights and constructing works with said property."

So here, in order to obtain municipal ownership as desired by the voter, it might be necessary to purchase a part of the system from the private ownership of existing lines; it might be necessary, where such purchase was not advisable, to construct or lay a parallel line. But there is but one object to be obtained by the expenditure of the money, and that is, a municipally owned and operated street railway system. The same reasoning is employed by the same court in a like case, *Clark v. Los Angeles*, 160 Cal. 317, 116 Pac. 966.

In *Nash v. Council Bluffs*, 174 Fed. 182, the electors were called upon to give their assent to or dissent from the issuance of bonds to purchase or build a system of waterworks. It was contended that the bonds were invalid because of the dual purpose "to purchase or build." The court held otherwise, saying, as might well be said here, but one question was submitted to the people: "It was a question of municipal or private ownership. That was in fact the question, and municipal ownership won out." In *Sioux Falls v. Farmers Loan & Trust Co.*, 136 Fed. 721, the question submitted was the issuance of bonds for the purpose of constructing or purchasing a system of waterworks, and it was claimed the bonds were invalid because of the submission of two separate and distinct propositions. The court ruled otherwise. In *Hubbard v. Woodsum*, 87 Me. 88, 32 Atl. 802, the proposition called for the expenditure of $30,000, to

o

construct new county buildings, and further authorized the county to borrow money for the purpose of construction. Held, not objectionable as covering more than one subject. The opinion reads in part: "The most that can be claimed in that respect is that there are two parts in the proposition, such two parts being but one whole." So it might be said as to the case at bar. The proposition contains two parts, but they are parts of one harmonious whole, and that is a municipal street railway system. A like rule is laid down in *State ex rel. Canton v. Allen*, 178 Mo. 555, 77 S. W. 868, where the submission to the vote of the people included a proposition to issue bonds for the purpose of constructing an electric light plant, and another to increase the municipal indebtedness by issuing bonds for the purchase of an electric plant then in existence. In response to the contention that the propositions as submitted invalidated the bonds because of their double nature, it was held the two propositions were so related that they could be united and submitted as one. The same end was intended to be accomplished, but in two different ways to be determined upon by the municipal authorities in the exercise of their discretion.

*State ex rel. Columbia v. Allen*, 183 Mo. 283, 82 S. W. 103, affords another illustration of the application of the same rule to the same contention. There the proposition was, one sum for the purchase of waterworks and an electric light plant of an existing privately owned plant, and the other another sum for the construction of a waterworks and electric light plant. *Kemp v. Hazelhurst*, 80 Miss. 443, 31 South. 908, and *Coleman v. Eutaw*, 157 Ala. 327, 47 South. 703, are like cases. In the latter case it is said:

"But where the purpose evolved in the blending is the product of two of the purposes enumerated in the act for which bonds may be issued, and they might naturally and reasonably be deemed or made a part of one of a more general scheme, we are of the opinion that the act does not inhibit the exercise by the governing body of a discretion to blend

into one proposition for submission to the voters such enumerated purposes."

In *Truelsen v. Duluth*, 61 Minn. 48, 63 N. W. 714, the court expressed its opinion that bonds for the erection or purchase of a water and light plant might be submitted together as one proposition, but held the method there employed illegal because of the antagonistic manner of the submission. It must be conceded that cases may be found, such as *Leavenworth v. Wilson*, 69 Kan. 74, 76 Pac. 400; *Stern v. Fargo*, 18 N. D. 289, 122 N. W. 403, and *Elyria Gas & W. Co. v. Elyria*, 57 Ohio St. 374, 49 N. E. 335, from which might be deduced a rule supporting appellant's contention; but those cases, as applied to purposes naturally related, are not in harmony with our holding in *Blaine v. Hamilton*, and for that reason cannot be regarded as authoritative here. Their reasoning is more in accord with a state of facts similar to those submitted in *Blaine v. Seattle*, where the propositions as submitted are unrelated and have no natural connection one with the other, and for that reason they are there cited as supporting the holding.

All of the cases dealing with this question of related or unrelated purposes or objects are more or less influenced by the special provisions of constitutions, statutes, and ordinances, but running through them all may be found two easily distinguished principles. Separate, distinct, and independent purposes or objects may not be joined in one proposition for submission to the voter. United, related and dependent objects, that together form one general scheme or plan, may be united and submitted as one. No better illustrations of the application of these two principles may be found than in *Blaine v. Seattle* falling within the first rule, and *Blaine v. Hamilton* falling within the second rule. The case at bar belongs to the second class, and adopting the reasoning employed in cases of that character, we hold there is no legal objection to the method employed in submitting this question of municipal ownership of street railways to

the people, as definitely outlined in the ordinance and proposition whereby it was called to their attention; and their judgment, whether wise or unwise, good or bad, must be upheld.

The judgment is affirmed.

Fullerton, Mount, and Ellis, JJ., concur.