CARRIE W. MABEE

*v.*

JOHN MABEE et al.

[Decided December 3d, 1915.]

1. In a suit by a wife against her husband to reach, in payment of his debt to her, his father's legacy to him, the court, having custody of the funds through payment to it, pursuant to order, by the father's executor, could distribute the legacy to the wife on petition filed in the suit, although a creditor of the husband, who attached the husband's interest in the estate of his father in the hands of the latter's executor after filing of the bill, issue of subpœna, and appearance by the husband, was not a party to the suit, since a court having in custody money for distribution, if satisfied that all the necessary parties are before it, may make distribution, whether the parties are brought in by the bill and subpœna or come in responding to the petition for distribution, as did the attaching creditor.

2. Where a wife sued her husband and others to reach, in payment of his debt to her, his father's legacy to him, and, after filing of the bill, subpœna to the husband, and his appearance, the husband's creditor attached in the hands of the father's executor the husband's interest in the estate, such attaching creditor was subject to the *lis pendens* created by the wife's bill, since a suit in chancery, prosecuted in good faith and followed by decree, is constructive notice, to every person acquiring from a defendant *pendente lite* an interest in the subject-matter of the litigation, of complainant's rights as charged by the bill and established by the decree, while the attaching creditor derived all his rights from the husband, standing in his shoes.

3. Courts of common law recognize the doctrine of *lis pendens.*

4. Where a wife, in her suit to reach, in payment of her husband's debt to her, his father's legacy to him, not only created a *lis pendens* by her filing of the bill, &c., but, before levy of an attachment of the husband's interest in the father's estate in the hands of the latter's executor by the husband's creditor, obtained from the court an injunction order impounding the whole fund in the custody of the executor, the fund remaining impounded pending suit until the final decree, which directed the executor to pay the money into court, which he did, an equitable lien in favor of the wife was created for the sum found due her by the decree.

5. The English rule that the doctrine of *lis pendens* is inapplicable to personal property other than chattel interests in land is probably not the rule in the United States.

On petition to distribute money in court.

Mr. *Allen R. Shay,* for the petitioner.

Mr. *Thomas M. Kays,* for Coursen, attaching creditor.

Mr. *Henry C. Hunt,* for the estate of John Mabee.

HOWELL, V. C.

On December 4th, 1914, Carrie W. Mabee, the complainant, brought suit in this court against John Mabee, her husband, and others, to recover a sum of money which she claimed was owing to her by him. His father, Edward Mabee, had recently died and left him a sum of money, as a legacy, and the object of the bill was to reach that fund. The executor of Edward Mabee's will is a party to the suit.

On the filing of the bill an order was made requiring the defendant to show cause why an injunction should not be issued, according to the prayer of the bill, with an *ad interim* restraint, preventing the executor of the deceased parent from paying over the legacy due to the husband under the last will of his father, and also prohibiting the defendant John Mabee from selling, assigning, mortgaging or transferring his legacy under his father's will. On the return day of this order there was a stipulation signed by the solicitors of all the parties whereby it was agreed that the restraining order theretofore issued in the cause should remain in full force until the final determination of the suit. The defendant John Mabee, and Theodore E. Dennis, executor of Edward Mabee's will, answered. After the answers were filed John Mabee died, and an order was made reviving the suit against Fred L. Mabee, administrator of his estate. The cause proceeded to a final hearing, was decided in favor of the complainant, and on June 1st, 1915, a final decree was entered adjudging that the complainant recover from the defendant Fred L. Mabee, administrator of John Mabee, deceased, the sum of $5,735, with costs, to be taxed, and that an execution issue according to the practice of the court; and that Theodore E. Dennis, executor of the will of Edward Mabee, upon

passing his accounts through the orphans court, and ascertaining the amount of money in his hands, pay that sum into this court to abide the further order of the court. In pursuance of that decree Mr. Dennis paid into this court the sum of $3,665.69.

On December 7th, 1914, subpœna was issued on the original bill, service of which was acknowledged by Theodore E. Dennis, as executor of the will of Edward Mabee, deceased, as his solicitor *pro se,* and as to John Mabee, the sheriff returned that he was not able to find him in his county, and that he was credibly informed and verily believed that the said John Mabee was out of this state, and that he resided in the city of Los Angeles, in the State of California. On December 17th, 1914, another subpœna was issued on the said bill, returnable on December 28th, 1914, service of which was acknowledged on December 17th, 1914, by Henry C. Hunt, as solicitor for John Mabee. The answer of John Mabee was filed on February 5th, 1915, on which day the clerk entered an appearance by John Mabee by Henry C. Hunt, his solicitor. On January 13th, 1915, after the filing of the bill, and the issue of subpœna and the appearance by the defendant John Mabee, a writ of attachment was issued out of the Sussex county circuit court at the suit of Frank E. Coursen against John Mabee for $709.80, by virtue of which the sheriff of the county of Sussex, on January 15th, 1915, attached in the hands of the said Theodore E. Dennis, executor, &c., all the right and interest of John Mabee in the estate of the said Edward Mabee, deceased, given and bequeathed to him in and by the last will and testament of the said Edward Mabee, and caused the estate to be appraised and the writ and return thereof to be filed in the office of the clerk of the county of Sussex; but no further proceedings were ever taken thereon by the attaching creditor. The complainant now claims the whole of the fund in court, and Coursen, the attaching creditor, claims a sufficient portion of it to satisfy his attachment.

The question is raised *in limine* whether the court can distribute the fund in question on a petition filed in the original suit, in view of the fact that the attaching creditor, Coursen, is not a party, and it is argued that on this account he has not had his day in court, and that any proceedings taken on the pending

petition would be nugatory as to him. This contention, however, cannot prevail. The situation is this: This court has in its custody and possession a sum of money for distribution. If it is satisfied that all the necessary parties are before it, it may make such distribution among those whom it finds to be entitled to the fund, or portions of it, and I conceive that it makes no difference whether these parties are brought in by the bill and subpœna or whether they come in in response to a petition.

The principal contention, however, is that which relates to the priorities of these two claims, the complainant claiming by virtue of her bill, subpœna and appearance thereto as constituting a *lis pendens,* subject to which the attaching creditor must take if he has obtained any right whatever.

I pass by the point that no judgment has yet been entered in the attachment suit, and that therefore the rights of the parties have not been fixed at common law, and I likewise omit any discussion of the point whether the fund was liable to garnishment as a fund in *custodia legis,* and take up the question of priorities.

The decision of the question at issue depends upon the principles which govern the pendency of suits. If the complainant, by virtue of what took place at and immediately after the filing of her bill created a *lis pendens,* it must be quite clear that the attaching creditor took subject thereto. The rule is laid down by Mr. Justice Depue in *Haughwout* v. *Murphy, 22 N. J. Eq. 531,* as follows: "A suit in chancery, duly prosecuted in good faith, and followed by a decree, is constructive notice to every person who acquires from a defendant, *pendente lite,* an interest in the subject-matter of the litigation, of the legal and equitable rights of the complainant as charged in the bill and established by the decree. This effect of a successful litigation in subordinating the title of a purchaser pending a litigation, to the rights of the complainant as established in the suit, is not derived from legislation. It is the doctrine of courts of equity, of ancient origin, and rests not upon the principles of the court with regard to notice, but on the ground that it is necessary to the administration of justice that the decision of the court in a suit should be binding, not only on the litigant parties, but also upon

those who acquire title from them during the pendency of the suit. Such a purchaser need not be made a party, and will be bound by the decree which shall be made."

The rule has been followed in this court in *Gray* v. *Case, 51 N. J. Eq. 426; Turner* v. *Houpt, 53 N. J. Eq.* (at *p. 553*), and re-affirmed by the court of errors and appeals in the case of *Wood* v. *Price, 79 N. J. Eq. 620*. It is also the doctrine of the courts of common law (*Allen* v. *Morris, 34 N. J. Law .159*); and it is a rule of almost universal acceptance. *Murray* v. *Ballou, 1 Johns. Ch. 566; Murray* v. *Lylburn, 2 Johns. Ch. 441.*

It appears to have been promulgated by Sir Francis Bacon, in 1618, while he was lord keeper of the great seal. His order is as follows: "12. No decree bindeth any that cometh in *bona fide,* by conveyance from the defendant before the bill exhibited, and is made no party, neither by bill, nor order, but where he comes in *pendente lite,* and, while the suit is in full prosecution, and without any color of allowance or privity of the court, there regularly the decree bindeth; but, if there were any intermission of suit, or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice."

The attaching creditor is not in the position of a purchaser for value without notice. He derives all his rights, if any he has obtained, through John Mabee, and he stands exactly in John Mabee's shoes. His position is the same as if John Mabee had by some voluntary act of his own attempted to create a lien on this fund in favor of the attaching creditor, or had made, or attempted to make, an assignment of the fund, or some portion thereof. And if he had attempted any such step as that he could not in the face of the authorities above cited drive the complainant from her position or obtain a lien superior to hers.

It must be remembered that the complainant not only created a *lis pendens* by her initial proceeding, but before the levy of the attachment obtained from the court an injunction order whose effect was to impound the whole fund in the hands and custody of Mr. Dennis, the administrator of Edward Mabee's estate, and that it remained so impounded pending the suit and down to the final decree. By the final decree Mr. Dennis was directed to pay

the money into court, which he did, where it now is, so that months before the attaching creditor took his proceedings, the fund in question was either under the control or in the actual possession of the court. The effect of this action is to create an equitable lien in favor of the complainant, to the extent of the sum found due by the decree in her favor, and, inasmuch as the decree is for a larger sum than the amount of the fund, her lien must prevail over that attempted to be obtained by the attaching creditor, to the full extent of the fund.

It may be said that the doctrine of *lis pendens* does not apply to the case in hand, for the reason that the proceeding is brought solely for the recovery of a money judgment and does not directly affect the title to or possession of property.

Mr. Justice Lindley said in *Wigram* v. *Buckley, C. A. (1894), 3 Ch. 494:* "Upon principle and authority, I am of opinion that the doctrine in question is inapplicable to personal property, other than chattel interests in land. The inconvenience of extending the rule to ordinary personal property is so extremely serious that it would, in my opinion, be very wrong to so extend it now for the first time, even if such extension could be justified by reasoning from well-established general propositions which might serve as premises for arriving at such a conclusion."

This, however strongly held in England, is probably not the rule in the United States. Neither can the remark apply to a case like the present, where there was an actual seizure of the property and a holding of it to answer the demands of the complainant.

I conclude, therefore, that the fund must be paid to the complainant.