VILLAGE OF NORTH FARGO, a Municipal Corporation, George F. Clark, Gordon W. Randlett and F. B. Starkenberg as Board of Trustees of the Village of North Fargo, and George F. Clark, Gordon W. Randlett, F. B. Starkenberg, Gust Kruger, Harry Hannes and Knut Johnson, for Themselves as Individuals, and all other Persons Similarly Interested, Appellants, v. CITY OF FARGO, a Municipal Corporation, H. W. Gearey, August Hanson, Alex Bruce, J. E. Hogan and K. M. Wilder, City Commissioners of the City of Fargo, Respondents.

(192 N. W. 977.)

**Municipal corporations — cities and villages municipal corporations possessing only statutory powers; doubtful claims of power or ambiguity in terms of statute resolved against municipality.**

1. Cities and villages in North Dakota are municipal corporations and possess only such powers as are conferred on them by statute. Doubtful claims of power, or doubt or ambiguity in the terms used by the legislature, are resolved against the corporation.

**Statutes — construed with reference to other statutes concerning same subject-matter or part of same general legislative system.**

2. Statutes must be construed with reference to other statutes concerning the same subject-matter or a part of the same general system of legislation.

Note.—On construction of statutes with reference to earlier statutes concerning same subject matter, 25 R. C. L. 1063; 3 R. C. L. Supp. 1440; 4 R. C. L. Supp. 1619; 5 R. C. L. Supp. 1363. On legislative control over boundaries of municipal corporations, 19 R. C. L. 732; 3 R. C. L. Supp. 969; 4 R. C. L. Supp. 1287; 5 R. C. L. Supp. 1044.

**Evidence — courts may take judicial notice of history of times when statutes enacted.**

3. In construing statutes, the courts may take judicial notice of the history of the times when they were enacted.

**Statutes — that legislature did not intend absurd or unjust consequences or great public inconvenience in enacting statute presumed.**

4. It is presumed that the legislature, in enacting a statute, did not intend absurd or unjust consequences, or great public inconvenience.

**Municipal corporations — city may not annex adjoining territory within limits of incorporated village "land."**

5. Construing § 3753, Comp. Laws 1913, as amended by chapter 68 of the Session Laws of 1915, with reference to the annexation of territory by cities, it is held that a city may not annex a portion of the territory within the limits of an incorporated village, although a part of the boundaries of the village border upon and adjoin the boundaries of the city.

**Municipal corporations — territorial extent can be modified, taken away, or altered only in manner provided by legislature.**

6. A municipal corporation is a creature of the legislature. Its rights, powers, duties, and territorial extent are fixed by the legislature and can be abridged, modified, taken away, or altered only in the manner provided by the legislature.

Opinion filed March 23, 1923.

Evidence, 23 C. J. § 1934 p. 122 n. 95; Municipal Corporations, 28 Cyc. p. 132 n. 19; p. 180 n. 4; p. 183 n. 34; p. 88 n. 60; p. 190 n. 73; p. 258 n. 38; p. 259 n. 39; p. 265 n. 11; Statutes, 36 Cyc. p. 1136 n. 25, 26; p. 1137 n. 41; p. 1147 n. 28, 30.

Appeal from order, District Court of Cass County, North Dakota, sustaining demurrer to the complaint, *Englert,* J.

Reversed.

*Barnett & Richardson,* for appellants.

The consent of persons living in territory to be annexed is not a prerequisite to a valid annexation. Waslien v. Hillsboro, 188 N. W. 738.

"This statute ought not to receive a construction which confers a power on one municipality to absorb another, or any part of it, and it confers no such power." Taylor v. Ft. Wayne, 147 Ind. 280; Independent Dist. v. Sioux City (Iowa) 2 N. W. 591; People v. Morrow (Ill.) 54 N. E. 839; People v. City, 181 Pac. 825; State v. Clark, 21 N. D. 517.

"It will not be presumed that the legislature intended to repeal an existing statute, unless it has clearly manifested its intention to do so, so it should not be presumed that the legislature intended summarily

to destroy, in whole or in part, an existing public corporation, unless its intention to do so is clear and unmistakable." State v. Nichols, 166 N. W. 813.

In the first place, townships and counties are commonly placed in a different class of municipal corporations than are cities and villages. Townships and counties are commonly called public quasi corporations. 1 Dill., Mun. Corp. 5th ed. §§ 35, 36; Dolese v. Pierce (Ill.) 16 N. E. 218; Abbott, Mun. Corp. § 8.

*W. H. Shure,* for respondents.

A municipal corporation is a public corporation created by government for political purposes and has subordinate and local powers of legislation, and a county is strictly a political corporation, a granted power to a designated portion of the people to aid and arrange the machinery of government. It is not designed for pecuniary profit, nor has it any powers but such as pertain to its strict municipal and public character. Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464.

A municipal corporation is the agent of the state to discharge some of the functions of the government. People v. Coler, 59 N. E. 716, 52 L.R.A. 814, 82 Am. St. Rep. 605.

A municipal corporation is the legislative grant of local self-government to the inhabitants within certain designated territory which is known as a city, town, or village and the corporate powers granted are exercised by its inhabitants in its corporate name. State v. McAllister, 18 S. E. 770; Wolverington v. Albany, 52 N. W. 455; State ex rel. Johnson v. Clark, 21 N. D. 526.

In the absence of express constitution, prohibition territory may be lawfully detached from one municipality and added to another. Metcalf v. State, 49 Ohio St. 586; Milwaukee v. Milwaukee, 12 Wis. 96; State ex rel. Richards v. Cincinnati, 27 L.R.A. 737.

"That the legislature not only has authority to determine the territory and boundaries of a municipal corporation but also to change or alter them by annexation or disconnecting territory therefrom either with or without the consent of the corporate authorities of the municipality or the inhabitants of the territory affected." People v. Rock Island, 111 N. E. 291; Laramie County v. Albany County, 92 U. S. 307; School Soc. v. School Soc. 14 Conn. 469; Bridge Co. v. E. Hartford, 16 Conn. 172; Hampshire v. Franklyn, 16 Mass. 76; Still v. Corning, 15 N. Y.

197; Granby v. Thurston, 23 Conn. 419; Yarmouth v. Skillings, 45 Me. 142; Langworth v. Dubuque, 16 Iowa, 273; Russel v. Reed, 27 Pa. 170; Washburn Waterworks Co. v. Washburn, 108 N. W. 194.

The power to divide a municipality is strictly a legislative power. Washburn Waterworks Co. v. Washburn, supra.

It is a general rule that where the legislature has made no exceptions to the positive terms of a statute, the presumption is that it intended to make none and it is not the province of a court to introduce an exception by construction. Tynan v. Walker, 35 Cal. 634, 95 Am. Dec. 152; Wabash R. Co. v. United States, 178 Fed. 5, 21 Ann. Cas. 819; Lewis v. Pawnee Bill's Wild West Co. 6 Penn. (Del.) 316, 16 Ann. Cas. 903; Ayers v. State (Ind.) 99 N. E. 730; Van Steenwyck v. Washburn, 17 N. W. 289; Mpls. St. P. S. S. M. Ry. Co. v. Industrial Commission, 141 N. W. 1119; Box v. Stanford, 51 Am. Dec. 142; Mellen Lumber Co. v. Industrial Commission, 154 Wis. 114, 142 N. W. 187; Kendall v. United States, 107 U. S. 123; Ballard v. Mississippi Cotton Oil Co. 62 L.R.A. 407; St. John v. Andrew Institute for Girls, 191 N. Y. 254, 83 N. E. 981; Schillenberger v. Ransom, 41 Neb. 631, 59 N. W. 1935; Hoke v. Henderson, 15 N. C. 1, 25 Am. Dec. 677; State v. Taylor, 33 N. D. 76.

Johnson, J. This is an appeal from an order of the district court of Cass county, sustaining a demurrer to the plaintiffs' complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

The facts alleged in the complaint, so far as material, are as follows: The city of Fargo is a municipal corporation. The village of North Fargo was organized as a village about twelve years ago, under the general laws of the state governing the incorporation of villages. The south line of the village abuts on the north line of the city of Fargo. Proceedings were initiated by the city of Fargo, under the provisions of chapter 68 of the Session Laws of 1915 and acts amendatory thereof, for the annexation of territory, a portion of which lies within the boundaries of the village of North Fargo. It is further alleged that the village of North Fargo has taken steps to install an individual water and sewer system for its inhabitants and that all of the village has been included and designated as a water and sewer district according to the laws of the state; that subsequent to the initiation of those

proceedings, as aforesaid, the defendants initiated proceedings to annex a portion of the territory embraced within the village of North Fargo. That water was furnished the residents of the village by respondents, but that since the trouble over annexation commenced, the respondents have publicly announced that water would no longer be furnished. That there is located in the village of North Fargo an educational institution known as the Sacred Heart Academy affording satisfactory educational advantages to the patrons thereof; that the village has funds on hand with which to construct a building for school purposes; that all of the village of North Fargo is embraced within a single school district and that the separation therefrom of the territory described in the annexation proceedings instituted by the defendants will materially hinder, obstruct, and impede the school district in providing educational advantages for the inhabitants. It is further alleged that the annexation proceedings against which the injunction is sought, if perfected, will irreparably damage the village in connection with the operation of schools, the levy of taxes in support of municipal and school undertakings, the installation of water and sewage systems and the maintenance thereof, and will hamper the village in the issuing of warrants and bonds for defraying necessary and proper municipal indebtedness. It is also alleged that the annexation, if completed, will interfere with the enforcement of laws within such territory and will cause an unseemly conflict between the village and the city. The complaint concludes with a prayer for an injunction against the defendants perpetually restraining the city of Fargo from procuring or claiming any rights by virtue of such annexation proceedings as are described in the complaint.

No question is raised as to the procedure or the details of the attempted annexation. The only question is whether the city of Fargo, a municipal corporation, may, under the statutes of this state, annex a portion of the territory embraced within the corporate limits of the village of North Fargo, also a municipal corporation.

Cities and villages in North Dakota are municipal corporations. State ex rel. Johnson v. Clark, 21 N. D. 517, 131 N. W. 715. Municipal corporations possess only such powers as are conferred on them by statute. Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464; Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403. Dill.

Mun Corp. § 33. In the case of Treadway v. Schnauber, supra, the territorial court said:

"Municipal corporations possess and can exercise the following powers and none others; first, those granted in express words; second, those necessarily implied incident to the powers expressly granted; third, those absolutely essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable; and any fair doubt as to the existence of a power is resolved by the courts, against the corporation and the existence of the power."

In the case of Stern v. Fargo, supra, this court restated the law substantially as laid down in the Treadway Case, supra. In the Stern Case the court says:

"That doubtful claims of power, or doubt or ambiguity in the terms used by the legislature are resolved against the corporation."

There is a dearth of authority on the only question in this case. Appellants cite many cases holding that "when there exist two tribunals possessing concurrent and complete jurisdiction of a subject matter, the jurisdiction becomes exclusive in the one before which proceedings are first instituted, and which thus acquires jurisdiction of the subject." State ex rel. Johnson v. Clark, supra. This principle manifestly has no application in this case. This is not a contest between two public corporations over the right to appropriate territory *outside the limits of both*. It is a question of the power of one municipal corporation to detach territory from another municipal corporation and to annex the same.

The decision of the case turns upon the construction of § 1 of chapter 68 of the Session Laws of 1915, which is an amendment to § 3753 of Comp. Laws, 1913. This section reads as follows:

"Sec. 1. Amendment. That § 3753 of the Compiled Laws of 1913, be and the same is hereby amended to read as follows:

"Sec. 3753. Any city in this state may so extend its boundaries as to increase the territory within the corporate limits thereof not to exceed one fourth of its area, by a resolution of the city council passed by two thirds of the entire members-elect, particularly describing the land proposed to be incorporated within the city limits, setting forth the boundaries and describing the land, platted by blocks and lots; Provided, that at least two thirds in area of the territory described in

such resolution and proposed to be incorporated within such limits shall have previously been platted into blocks and lots."

. The statute authorizes a city to increase its territory by annexing "land." It further requires that this "land" must have been previously platted into blocks and lots. This last provision was added at the Session of 1915. It was a part of the statute many years ago. Did the legislature use the word "land" in this section in the sense of territory already within the limits of an incorporated village divided into lots and blocks and subject to village government? Or, on the other hand, was it the intention of the legislature that only "land" or territory lying outside of incorporated cities or villages be annexed, provided the same were first platted into lots and blocks?

It is a settled rule of statutory construction that a statute must be construed with reference to other statutes concerning the same subject-matter, or a part of the same general system of legislation, 36 Cyc. 1147: with reference to the history of the times when enacted, 36 Cyc. 1137: and it is presumed that the legislature did not intend absurd or unjust consequences, or great public inconvenience, 36 Cyc. 1135, 1136; 25 R. C. L. 1017 ff.

Section 3753, Comp. Laws, 1913 (Session Laws, 1915, § 1, chap. 68), appears as § 1 of article 17 of chap. 73 of the Session Laws of 1887. Again, a similar purpose is expressed in somewhat more elaborate form in § 1, chapter 32 of the Session Laws of 1889, limiting, however, the right of annexation to cities of 3,000 population or more. This section appears again as § 185 of chapter 62 of the Session Laws of 1905, and in § 2825 of the Revised Codes of 1905. In the Revised Codes of Dakota 1877, §§ 47–50 of chapter 24 relating to the incorporation or towns and cities provide for the extension of the corporate limits of towns. Villages in this state have powers of annexation given in terms substantially as broad as the language of § 3753, supra. See §§ 3898–3901, Comp. Laws, 1913, §§ 3968–3973.

In the statutes passed by the territorial legislatures relating to the incorporation of places other than cities, the term "town" is used instead of "village." The "town," or as we now call it, the "village" antedates and is the antecedent of the city in the history of Dakota Territory and of North Dakota. The territorial legislature made provision for the annexation of territory to and the detachment of territory from towns

and cities. The earliest enactment which we have been able to find upon the subject of detaching territory from the town or city is chapter 104 of the Session Laws of 1887. Here the town and the city are given the same powers in this regard. Section 2 of this chapter provides that a portion of the territory of any incorporated city or town may be withdrawn and disconnected therefrom, but only in the event that the portion sought to be disconnected has *not been laid out into city or town lots and blocks.* This section appears as 2438 Revised Codes of 1895; as § 3969 of the Compiled Laws of 1913; and as chapter 32 of the Session Laws of 1921. It is significant against respondents' position that the annexation statutes now require the territory to be annexed to have been *previously* platted; on the other hand, the only statutory provision for detaching territory from villages requires that the territory to be detached shall *not* have been platted into lots and blocks. It is, nevertheless, claimed that a city may detach platted portions of a village, though the general statute on detaching territory expressly provides that platted territory may not be detached.

If respondents' contention be sound, a city might, as early as 1887, have annexed a portion of a town, or a town a portion of a city, if one had been contiguous to the other. It is clear, however, that since the town was created by special charter, a city could not abridge the rights and privileges of the town under the special charter, or abrogate them altogether, by virtue of the general provisions of chapter 104 of the Session Laws of 1887. 36 Cyc. 1151. Were it otherwise, the town would have the same right against the city, also organized, in 1887, under special charter. Section 2 of this chapter provided the only mode whereby territory could be disconnected from a city or town and puts both classes of municipal corporations in the same class as to this right and does not expressly, or by implication, give the power to the one to absorb a portion or all of the territory of the other. If respondents' contention be sustained, the early statutes and the existing law on the detaching and annexing of territory by cities and villages are rendered contradictory and conflicting.

Section 51 of chapter 24, Revised Codes of 1877 of Dakota Territory provides for the dissolution of incorporated towns; this section was, in substance, carried into the Revised Codes of 1895 as § 2398 and is § 3903 of the Compiled Laws of 1913. The term "village" in the later

revisions was substituted for "town," as used in the original territorial statute, and disincorporation permitted upon the initiative of the voters in the village if approved by the electors at an election held for the purpose. No other method of disincorporation or dissolution is provided.

From the foregoing very brief outline of legislation with reference to the annexation and detaching of territory by cities and villages, it will be seen that the legislature has several times dealt quite fully with the subject. In the first place, it made provision for the incorporation of the town early in the history of the territory. It made provisions for the annexation of territory to the town and later to the village; and it made provision for detaching territory from the town or village. In the second place, it made provision for the annexation of territory to an incorporated city and the detachment of territory therefrom. Thirdly, it made provision for disincorporation and dissolution of villages. Both cities and villages are municipal corporations; under the statutes of the territory and later of the state, both are given quite comprehensive powers of a police and legislative character. Originally the city was the creature of a special statute as was also the town, the antecedent of the village; later, general incorporation acts were passed governing the incorporation of both cities and villages. See chap. 73, Sess. Laws 1887; chap. 62, Sess. Laws 1905. Whether the town or village was created by a special law or came into existence under the general incorporation act, it had definite boundaries, a record of which was made in the office of the register of deeds of the county. Having come into existence as a municipal corporation, the town, the village, or the city could change its boundaries only in the manner provided by statute. Control over the boundaries of municipal corporations is in the legislature and the territorial limits thereof may be enlarged or restricted only in the manner prescribed by statute. Waslien v. Hillsboro, 48 N. D. 1113, 188 N. W. 739. McQuillin, Mun. Corp. § 265. The corporation charter was a grant from the legislature. The municipal corporation virtually became a public agent and existed largely for the performance of acts for the public benefit as an agency of the State Government. Its charter might be amended or repealed; it might be devested of its corporate character when the legislature so decreed. It is the creature of the legislature and its rights, powers, duties, and territorial extent are fixed by the will of its creator. Waslien v. Hillsboro,

supra. The statutory method provided for detaching territory is exclusive of all others. The laws of this state make no provision for detaching territory from an incorporated city, village, or town, except as found in § 3969, Comp. Laws, 1913, as amended by chapter 32, Sess. Laws, 1921. It seems clear, therefore, that no authority exists in the statutes or can be read into chapter 68 of the Session Laws of 1915, giving the city of Fargo the right to annex any portion of the territory within the corporate limits of the village of North Fargo and thus detach territory therefrom. The construction contended for by respondent would introduce conflict into the statutes governing the annexation of territory to cities and the detaching of territory from cities and villages.

"Courts may appeal to the historical facts contemporaneous with the enactment of legislation by Congress or state legislature to aid them in arriving at the true meaning, scope and effect of such legislation. The history of the times during which a law was enacted tends strongly to disclose reasons for the act, and therefore, the evils sought to be remedied. . . . Whenever light can be derived from such sources, the courts will take judicial notice of the facts of contemporaneous history, the prior state of the law, the particular abuse or defect which the act was meant to remedy, and will then apply the language of the act to such state affairs." Chicago, R. I. & P. R. Co. v. Gist, 79 Okla. 8, 190 Pac. 884; 36 Cyc. 1137.

When the territorial legislature passed the various laws, to which reference has been made, providing for the annexation of territory by cities and towns and the detaching of territory therefrom, no conditions existed similar to or identical with the situation in this case. Cities were then the creatures of special charters and they were small; towns and villages were few and far between; and no village in the state bordered upon a city. The conditions known to the law making body were such as characterized pioneer communities in this part of the Middle West in the first stages of development in the late 70's and early 80's. The population of the territory was small; according to the census of 1890, only 5.6 per cent of the population of North Dakota was urban as distinguished from rural, according to the mode of classification then used. The law making body had in mind a growing community with towns that would require the addition of territory from time to

time, as population increased. The purpose of this legislation always has been to enable incorporated towns, later known as villages, to expand by taking in adjacent or contiguous unincorporated land or territory, to meet conditions of development, known or anticipated. The territorial legislature had primarily in mind the need of cities and villages for land to accommodate a population about to overflow the existing corporate boundaries.

As urban communities have developed and multiplied, and population increased, the legislatures of the various states have found it necessary to provide for the consolidation of villages with cities. We have found no case where, in the absence of statute expressly authorizing such consolidation or annexation, the courts have held that cities had the implied power to encroach upon the territory of another incorporated city or village. To hold otherwise would do violence to fundamental principles in the law of municipal corporations.

No conditions having existed identical with or analogous to the situation in the case at bar, the legislature will not be presumed to have intended to cover such a situation under the circumstances in this case, unless the language is clear and unequivocal. "That this mausoleum is not exempt from taxation, it may be said, to use the language contained in the state tax board's conclusion, when the legislature exempted building for 'cemetery use,' it could hardly have had in mind such a structure as that involved in this appeal; for such were not then known or contemplated." Mausoleum Builders v. State Bd. 88 N. J. L. 592, 96 Atl. 495.

When the power of annexation given respondent, and other cities in the territory, under special charter in the language equally general, was embodied in the general incorporation laws of the territory and of the state, conditions had not changed substantially, and we are convinced that the legislature did not intend to enlarge the meaning of the words "territory" or "land" so as to permit a city to annex a village or a village to absorb a city, or a portion of its territory, or the one to detach territory from the other. The privileges and powers granted to the city of Fargo under its Special Charter of 1875 (See Sp. Laws, Terr. Leg. chap. 12) were coextensive with the territorial limits therein defined and operated throughout such territory. The same is true of the privileges, powers, and immunities granted villages duly incorpor-

ated, whether under general or special law. It is not necessary to the execution of any of such powers or the exercise of any of the privileges of municipal corporations that one such corporation have the power to encroach upon the territory or the territorial jurisdiction of another corporation as defined by the legislature.

It is contended that the municipal corporation which first initiates proceedings to annex territory of the other may do so. That is to say, the right of one municipal corporation to absorb all or a portion of the territory of another depends entirely, according to this argument, upon the issue of a contest of speed in commencing annexation proceedings. We do not believe that such was the intention of the legislature. It may have been true that, at one time, it was the unwritten law of the frontier that he who was quickest on the trigger had the longest expectancy of life. We do not believe that the legislature intended to adopt this rule and to make the continued existence of municipal corporations dependent upon the outcome of a race for the initiation of proceedings by one for the absorption or annexation of the other.

If two municipal corporations consolidate, or if one absorbs a portion of the territory of the other, practical and sometimes difficult questions arise involving the equitable apportionment of property and indebtedness. The statutes governing the annexation of territory by cities and villages, assuming that the respondents' claim of power be sustained, are wholly silent as to the assumption of indebtedness of the old by the new corporation, or of the division of property in the event that one municipal corporation annexes a portion of the territory of another. While silence on this important practical question, involving as it may contract rights of third parties and the interests of creditors, would not be conclusive against the claim of power to annex, were the intent clear, yet it is significant and should be considered.

It is legitimate in this connection to take note of the policy of the legislature of this state in regard to the general question of the division and consolidation of public corporations. The legislature has, on numerous occasions, provided for the division and consolidation of school districts, townships, and counties, and for the annexation of the territory of one such public corporation by another. In every instance, provision has been made by the legislature for the equalization of indebtedness and property generally in the event of division, annexation, or

consolidation. Comp. Laws, 1913, §§ 1312, 1321, 1327, 3212-3214, 4079-4082. No such provision is made in the statutes applicable to corporations of the next higher grade, namely, municipal corporations. It seems to us that this omission to deal with an important and practical aspect of the annexation question is significant and indicative, in connection with other considerations, of the absence of legislative intention to permit one municipal corporation to absorb another or annex a portion of its territory.

Power to annex the territory of another municipal corporation is not necessarily implied from or necessarily incident to the power granted to annex adjacent or contiguous platted territory. Nor is such power absolutely essential to the declared objects and purposes of the corporation. In the statute under consideration, such power is not given in express terms; if given at all, it must be deduced from language giving power of annexation in general terms. In view of what has been said heretofore and of the statutes which provide for the manner in which territory may be detached from an incorporated village, it seems that the doubt as to the existence of the power in a city to detach and annex a portion of the territory of an incorporated village must be resolved against the city, under the rule laid down in Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464, and Stern v. Fargo, 18 N. D. 289, 26 L.R.A. (N.S.) 665, 122 N. W. 403.

Section 3658, Burns's Annotated Statutes, Indiana 1894, is identical with § 48, chapter 4, Revised Codes of 1877, except for a difference in names of officers and offices. The Indiana statute was passed in 1867 and ours seems to have been adopted for the first time in 1877. Whether these statutes are of common origin or ours is adopted for Indiana, it is not possible or material to decide. The supreme court of Indiana in Forsythe v. Hammond, 142 Ind. 505, 30 L.R.A. 576, 40 N. E. 267, 41 N. E. 950, held that the city of Hammond could not annex territory if the same had, prior thereto, been annexed to East Chicago. The court say:

"The effect of this annexation to East Chicago, if valid, would be to defeat the Hammond petition, for if the strip was annexed to East Chicago, it could not also be annexed to Hammond. . . ."

The Indiana Statutes, §§ 3658–3660 are general in terms and give

cities the power to annex territory or land, in terms substantially as general as the language of chapter 68, Session Laws of 1915.

Darby v. Sharon Hill, 112 Pa. 66, 4 Atl. 722, is an interesting case. Under the statutes of Pennsylvania as then existing, the court of quarter sessions had the authority to incorporate boroughs. The court of quarter sessions of Delaware county entertained proceedings to incorporate the borough of Sharon Hill. Sharon Hill was an incorporated village at the time the incorporation proceedings were had and Darby was a borough. A portion of the borough of Darby was sought to be included within the proposed new borough of Sharon Hill and the question was whether or not this could be legally and properly done. The court thus states the question in the case:

"Laying aside all technical objections to this record, the main question raised is whether or not, in the incorporation of a borough by the courts of quarter sessions, it is competent to embrace within the bounds territory covered by the charter of a borough already incorporated."

After stating the proposition that a municipal corporation is merely an agency created for the purpose of carrying out in detail the objects of government, that the agency is revocable, that the charter is at all times under the control of the legislature, which body may enlarge or reduce the territorial extent and functions of the corporation or terminate its existence, the court says:

"The incorporation of Sharen Hill, according to the limits designated, it must be admitted, necessarily involves an alteration or change in the limits of the borough of Darby, and that change is not an enlargement, but a contraction of its lines."

The court then points out that the legislature made express provision for changing the limits of boroughs, and that the same proceedings for that purpose must be had as are required in the original incorporation. Since the legislature has provided a method for changing the boundaries of the borough, such change cannot be accomplished indirectly or in any other manner than as prescribed. The court held that it was not within the power of the court of quarter sessions to take a portion of the municipal corporation of Darby and annex the same to Sharon Hill and make it a part thereof.

Our legislature has provided a method for disconnecting territory from a village. That method was not followed in this case, but another

municipal corporation assumes to detach such territory in another manner. Furthermore, the statutes governing the disconnecting of territory from an incorporated village, provide that such territory may be disconnected, only if the same has *not been platted into lots and blocks.* The respondents claim the right to disconnect territory regardless of its platted or unplatted character. We are of the opinion that the legislature never intended to give a city such power and that such power cannot and should not be implied.

The demurrer should have been overruled.

The order of the trial court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.