# STATE EX REL. VILLAGE OF FRIDLEY v. CITY OF COLUMBIA HEIGHTS.[1]

June 6, 1952.

No. 35,638.

[1]Reported in 53 N. W. (2d) 831.

*Hall, Smith & Hedlund, Wyman Smith, Edmund T. Montgomery,* and *Snyder, Gale, Hoke, Richards & Janes,* for relator.

*Joseph E. Wargo,* City Attorney, and *Hugh H. Barber,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Quo warranto proceedings instituted here by the village of Fridley against the city of Columbia Heights to determine the validity of certain annexation proceedings whereby an irregularly shaped area of land lying entirely within the village of Fridley is sought to be annexed to the city of Columbia Heights, and requiring the city of Columbia Heights and its elected officials to show why

they should not be ousted from exercising jurisdiction over territory wholly within the corporate limits of the village of Fridley.

The village of Fridley was incorporated June 9, 1949. Its status as a village was affirmed here March 30, 1951. See, State ex rel. Northern Pump Co. v. So-called Village of Fridley, 233 Minn. 442, 47 N. W. (2d) 204. It has a population of approximately 3,800 inhabitants. Columbia Heights is a city of the fourth class with a population of approximately 8,200 inhabitants, organized and existing under a home rule charter adopted June 9, 1921.

This court appointed the Honorable William C. Christianson, judge of the district court, first judicial district, as referee to hear the evidence and report his findings and conclusions. His report was filed here December 28, 1951. Therein he reported his conclusion that the proposed annexation was invalid and unauthorized; that the actions of the city of Columbia Heights taken in connection therewith were null and void; and that the village of Fridley was entitled to a writ of ouster ousting the city of Columbia Heights and its elected officials from exercising any jurisdiction over territory within the village of Fridley sought to be annexed to Columbia Heights under the latter's ordinance No. 277. This report, as well as respondent's exceptions and objections thereto, are now before us so that the issues presented by these proceedings may be determined.

The facts stipulated by the parties and found by the referee in substance are as follows:

On March 27, 1951, a number of freeholders within the village of Fridley, hereinafter referred to as the village, submitted a petition to the city of Columbia Heights, hereinafter referred to as Columbia Heights, requesting that certain tracts entirely within the village owned by petitioners be incorporated in and made a part of Columbia Heights.

One of such tracts owned by Minnesota Linseed Oil Company abuts on a small part of the west limits of Columbia Heights for a distance of 660 feet from south to north between Forty-fourth and Forty-fifth avenues northeast. Another tract owned by Northern

Pacific Railway Company abuts on a small portion of the west limits of Columbia Heights a distance of only 1,980 feet from south to north between Thirty-seventh and Fortieth avenues northeast. Between these two small abutments and separating them from each of. This tract is occupied by the homes of 10 families; a building limits of Columbia Heights. At no other point does the territory which is sought to be annexed adjoin the limits of Columbia Heights, although tracts of several petitioners extend northerly and some distance west of such limits a distance of approximately 2,000 feet beyond the Minnesota Linseed Oil Company abutment, which terminates at Forty-fifth avenue northeast. In consequence, portions of the village will completely separate most of the tracts sought to be annexed to Columbia Heights from the latter, except by way of the two small abutments above described.

If the proposed annexation becomes effective, one of the results thereof will be to leave within the village four areas or "islands" of land completely cut off from the village and cut off from each other, as follows:

(a) An area lying on the southerly border of the village adjacent to Minneapolis, comprised of vacant land surrounded on three sides by Columbia Heights and on one side by Minneapolis.

(b) An area at the extreme southwest corner of the village bordered by Minneapolis on the south, by the Mississippi River on the west, and by Columbia Heights on the remaining boundaries thereof. This tract is occupied by the homes of 10 families, a building owned by Petroleum Carriers used as a garage and office at the intersection of Marshall street northeast and Thirty-seventh avenue northeast; a lot owned by the Fridley Oil Company and used as a gas station and a trailer camp; and a number of lots owned by Minneapolis utilized as a water works and sanitary plant.

(c) An area owned by the United States government containing industrial buildings owned by the government and leased to Northern Ordnance Incorporated, a subsidiary of Northern Pump Company.

(d) An area south of the property owned by Minnesota Linseed Oil Company bounded on the east, north, and west by the city of Columbia Heights and on the south by Minneapolis. It contains residences, a grocery store, and a small porcelain plating plant.

The annexation would remove from the village the following: An industrial plant of Minnesota Linseed Oil Company, consisting of 12 large elevators, railroad trackage and highway, employing approximately 150 people; land owned by the Standard Oil Company abutting on railroad trackage; land belonging to the Northern Pacific Railway Company and the Great Northern Railway Company with numerous railroad tracks, switches, and shops thereon; land owned by the Northern Pump Company, including industrial buildings, parking areas for vehicles, wells, water mains, and like items; land owned by the Minneapolis, Anoka and Cayuna Range Railway Company, consisting of railroad trackage extending from Minneapolis across the tract of land owned by the Northern Pump Company; land originally owned by Mike Evenoff, consisting of a house and farm buildings used for market gardening and conveyed subsequent to the commencement of these proceedings to the Northern Pump Company.

With the exception of two blocks and a portion of another, no part of the land included in the petition was platted. It is described in metes and bounds or by lot numbers in Auditor's Subdivisions.

The village provides the following municipal benefits: One full-time police officer; one part-time police officer; two constables; one village-owned police car equipped with two-way radio with the sheriffs of Hennepin and Anoka counties; one new water-carrying fire truck, fully equipped and endeavoring to meet class 9, underwriter's specifications; one used tanker truck carrying 1,000 gallons of water. At present it has no municipal water, sewage, or other sanitation facilities.

Columbia Heights maintains the following: A municipal water system; municipal sanitary and storm sewers; a full-time police force of seven men with a squad car with a two-way radio; and a police station. It provides fire protection by means of paid firemen

on duty 24 hours a day, supplemented by an organized volunteer fire department, operating three fully equipped fire trucks. It has a centralized business district, including banking services.

The owners of the territory included in the petition for annexation are not required to pay the unprotected rate for fire insurance coverage which prevails in the village generally—this because of prior contracts for such protection with either Columbia Heights or Minneapolis.

On March 30, 1951, Columbia Heights, by ordinance No. 277, adopted under its charter, approved the petition for annexation and provided that the lands described in the petition be incorporated within the city of Columbia Heights.

In a memorandum attached to the findings and conclusions, the referee set forth at length the statutes, authorities, and legal principles upon which he based his conclusion, in substance, that no power exists under M. S. A. 413.14, governing the proposed annexation, whereby a city of the fourth class may annex to it part of a territory entirely within an adjoining incorporated village.

Section 413.14 provides:

"When the majority of the owners of any property which has been platted into lots and blocks or outlots, or the owner of any tract, piece, or parcel of land abutting upon any incorporated city having 10,000 inhabitants or less, whether such city is incorporated under general or special laws, shall petition the city council to have such property annexed to the city, the city council may by ordinance declare the same to be an addition to such city and thereupon such territory shall become a part of such city as effectually as if it had been originally a part thereof."

Counsel for respondent, seeking to uphold the annexation, contend that § 413.14 is couched in such clear, unambiguous, and comprehensive terms that it admits of no judicial construction which would engraft upon it any exceptions or limitations; that, since no provision is contained therein which denies the right of a city to annex a portion of an adjoining incorporated village, provided the

owners of the lands involved consent thereto, this court cannot read into the statute such a limitation.

Counsel for the village assert that a statute must be construed to give effect to the intention of the legislature; that where such intent can be gathered from the language of the statute it must be ascertained therefrom; that where the language used leaves doubt as to such intent it must be ascertained from consideration of such matters as the state of the existing law, the objects to be accomplished, the consequences which would follow one or the other of two possible constructions, the legislative policy in respect to the matter, as well as other pertinent facts and circumstances; and that where a statute general in character, if applied without limitation, would permit acts not reasonably within the legislative contemplation or would result in absurd and unjust consequences, the court should give full effect to the implied exceptions or limitations thereto intended by the legislature.

■ M. S. A. 645.17 (1) provides that courts shall be guided by the presumption that "The legislature does not intend a result that is absurd, impossible of execution, or unreasonable." State ex rel. Danielson v. Village of Mound, 234 Minn. 531, 48 N. W. (2d) 855. It is well established that a municipality has such powers only as are expressly conferred upon it by statute or as may be necessarily implied from those expressly conferred. It has no inherent powers. 4 Dunnell, Dig. & Supp. § 6684. While the legislature may, by express statutory enactment, confer upon a municipality the power to annex all or part of another municipality adjacent to it (Pence v. City of Frankfort, 101 Ky. 534, 41 S. W. 1011; Kansas City v. Stegmiller, 151 Mo. 189, 52 S. W. 723; State ex rel. v. Cincinnati, 52 Ohio St. 419, 40 N. E. 508, 27 L. R. A. 737; Wheeler School Dist. v. Hawley, 18 Wash. [2d] 37, 137 P. [2d] 1010), such power is not to be implied from or incident to the power conferred upon a municipality "to annex adjacent or contiguous platted territory." Village of North Fargo v. City of Fargo, 49 N. D. 597, 609, 192 N. W. 977, 981.

In situations where there is no statute on the subject or where a legislative enactment does not authorize annexation of adjacent municipal territory in direct terms, it is generally held that a municipality does not possess authority to extend its limits into organized areas. City of Pascagoula v. Krebs, 151 Miss. 676, 118 So. 286; McKeon v. City of Portland, 61 Or. 385, 122 P. 291.

■ In State ex rel. Hilton v. City of Brookside, 161 Minn. 171, 201 N. W. 139, this court had occasion to consider the question of the *implied power* of a newly organized city to include within its limits "part" of a previously organized borough or village. L. 1921, c. 462, there under consideration, provided by § 1 thereof that inhabitants of a contiguous territory not organized as a city might, by two-thirds vote of its legal voters, incorporate as a city of the fourth class and include therein "territory * * * theretofore organized into a borough or village." The issue was whether this express authority was broad enough to imply the right of such residents to include *part* of an organized borough or village. We held that it was not, and that the act permitted inclusion of organized villages or boroughs only in their entirety. There we stated (161 Minn. 175, 201 N. W. 140):

"* * * It [the statute] does not say that the city may include *part* of a borough or village, * * *. If the legislature had intended to authorize the city to take part of a village or borough, it would have used language expressing that intention. Authority of such importance and having such far-reaching consequences will not be implied unless necessary to accomplish the legislative purpose, or the intention to confer it is reasonably free from doubt. * * * We find nothing to indicate an intention to give authority to dismember them [municipal entities]. * * * such a municipality must be treated as an entirety. * * * it may not be divided into segments for the purpose of forming all or part of one or more cities."

■ An examination of § 413.14 reveals no express language empowering a city of the fourth class to annex by ordinance, property wholly within an adjoining incorporated village or city. The ex-

press power granted therein to cities of the fourth class is the power to annex abutting property (a) *which has been platted into lots and blocks or outlots* when a majority of the *owners* so petition, or (b) which is an unplatted tract, piece, or parcel of land when the *owner* thereof so petitions. The property included in the petition for annexation here, insofar as it abuts on Columbia Heights, has not been platted into lots and blocks or outlots,[2] nor is it an unplatted tract belonging to a single owner. It follows that the lands described in the petition do not come within the express authorization contained in § 413.14 under either classification (a) or (b), and that if the power to consummate the challenged annexation is to be found in § 413.14 it must be by implication.

We feel that such a broad power should not be implied from the language of § 413.14, particularly in the absence of any provision therein relating to the apportionment of the public indebtedness of the village from which the lands are sought to be detached, for hearings and elections to determine the issue, and for like matters which, while not conclusive in establishing the legislative intent, are usually contained in legislation relating to the detachment of land from organized villages.[3]

---

[2] A portion of the property adjoins other property which has been so platted. The latter, however, does not abut upon Columbia Heights.

[3] M. S. A. 412.061 provides that territory in one village abutting on another may be detached from the first and annexed to the second. It requires an ordinance by the village in which land is located, and provides that such detached land shall be subject to taxation for pre-existing bonded indebtedness of village from which it was detached to the same extent as if still part thereof.

M. S. A. 1945, § 413.27 (repealed by L. 1949, c. 119) provided for detachment of unplatted lands or territory within an incorporated village upon petition and majority vote in a special election called to determine the question.

M. S. A. 1945, § 413.28 (repealed by L. 1949, c. 119) related to detachment of agricultural land within a village and provided for continued liability of such detached land for a proportionate share of the outstanding indebtedness of the village.

M. S. A. 1945, § 413.29 (repealed by L. 1949, c. 119) provided for detachment of tracts of not less than 30 acres used for agricultural pur-

■ Our conclusion on this issue is in harmony with the construction given similar statutes by the courts of other states. In Village of North Fargo v. City of Fargo, 49 N. D. 597, 192 N. W. 977, the city of Fargo sought to annex a part of the village of North Fargo under Laws North Dakota 1915, c. 68, § 1 (Comp. Laws N. D. 1913-1925, § 3753), which provided in part as follows:

"Any city in this state may so extend its boundaries as to increase the territory within the corporate limits thereof not to exceed one-fourth of its area, by a resolution of the City Council * * *, particularly describing the land proposed to be incorporated * * *, setting forth the boundaries * * *; Provided, that at least two-thirds in area of the territory described * * * shall have previously been platted into blocks and lots."

In denying that the word "land" as used in this section permitted annexation of territory already within the limits of an incorporated village, the North Dakota court stated (49 N. D. 609, 192 N. W. 981):

"Power to annex the territory of another municipal corporation is not necessarily implied from or necessarily incident to the power granted to annex adjacent or contiguous platted territory. Nor is such power absolutely essential to the declared objects and purposes of the corporation. In the statute under consideration, such power is not given in express terms; if given at all, it must be deduced from language giving power of annexation in general terms. In view of what has been said heretofore and of the statutes which provide for the manner in which territory may be detached from an incorporated village, it seems that the doubt as to the existence of the power in a city to detach and annex a portion of the territory of an incorporated village must be resolved against the city, under the rule laid down in Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464, and Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403."

poses and within a village, and for the continuing liability of such a tract for its proportionate share of the indebtedness of the village.

A similar question was raised in City of Wauwatosa v. City of Milwaukee, 180 Wis. 310, 192 N. W. 982. Two Wisconsin statutes were there involved. One section, Wisconsin St. 1919, c. 64*bb*, § 925-21*a*[4] (in many respects similar to M. S. A. 412.061[5]), authorized detachment of territory of an incorporated city such as Wauwatosa and its subsequent attachment "to the town or towns to which the same shall be annexed." The other section, § 925-17, provided that "Territory lying adjacent to any city * * * may be annexed to such city in the manner hereinafter set forth."

In denying that the latter authorized annexation by a city of territory within an adjacent city, the Wisconsin court said (180 Wis. 313, 192 N. W. 983):

"* * * secs. 925-17 * * * must properly be construed in connection with * * * sec. 925-21*a*, * * * providing for the more limited field of detachment of municipal territory.

[4]Section 925-21*a* provided:

"Upon the petition of a majority of property owners owning three-fourths of the taxable real estate which it is proposed to detach, * * * within the corporate limits of a city of the * * * fourth class, * * * and. * * * within a section adjacent to the boundary lines of any such city, the common council may by ordinance detach such real estate from such city. * * * and if so adopted [the ordinance], the said property shall be detached from such city and attached to the town or towns to which the same shall be annexed and shall be taxable therein."

[5]M. S. A. 412.061 provides:

"Territory in one village abutting on another may be detached from the first and annexed to the second in the following manner. The owner or owners of the affected land may petition the councils of both villages for such change. If the council of the village in which the land is located finds that the change will be for the benefit of the village and the land affected, it may by ordinance declare such land detached from the village and the detachment shall become effective at the date specified in the ordinance but not before the council of the other village has adopted an ordinance annexing the land to it. Copies of the annexation and detachment ordinances shall be filed with the county auditor and secretary of state as provided generally in cases of annexation and detachment. The land affected shall be subject to taxation for the payment of interest and principal on all pre-existing bonded indebtedness of the village from which it was detached to the same extent as if it were still a part of that village."

"The two statutes, where the literal enforcement of the one clashes with the literal enforcement of the other, must be construed together and harmonized if possible, so as to permit effect to be given to each, and where such * * * general language * * * would, if construed literally * * * nullify the evident purpose and express language of the other, it is our duty to prune down the literal language or possible broad construction of the one so as to leave vitality in the other."

It is to be noted that neither Wisconsin St. § 925-21a, nor M. S. A. 412.061 provides for attachment of detached village territory to adjacent cities. The Wisconsin court nevertheless held that the language of § 925-21a, when construed in conjunction with § 925-17, negatived an implied authority in the latter for annexation by one city of portions of another city adjacent to it.

■ The construction sought by respondent appears unreasonable and would lead to unjust results. If adopted, an organized village might be cut down from time to time until it became but a small part of its original area, without the consent of the inhabitants remaining therein and without apportionment of the public debt, even though incurred directly for benefits accruing to the detached territory. It could result, as in the instant case, in a division of such a village into "islands" separated from each other by portions of other municipalities and disconnected from the public institutions of the village. No municipality would be safe in planning its affairs. We are satisfied that if the legislature had intended to grant power or authority to bring about such results it would have expressed it in clear and concise language and would have made ample provision for apportionment of debts and like matters.

■ Based upon the foregoing, we arrive at the conclusion reached by the referee. In substance, it is that § 413.14 does not contain express authority for annexation of a portion of an incorporated village such as was here contemplated, and that such power cannot be implied from the language used or otherwise engrafted thereon by judicial construction.

Accordingly, it is held that the proceedings whereby such annexation was attempted under § 413.14, as well as ordinance No. 277 of the city of Columbia Heights and all proceedings thereunder, are null and void and without any force or effect, and that the city of Columbia Heights and its officials be and they are hereby ousted from exercising jurisdiction over territory wholly or partly within the corporate limits of the village of Fridley.

Let a writ of ouster issue in accordance herewith.